**Willie BRANTLEY, Appellant,**

v.

**Edward J. SKEENS, Guardian ad litem, Appellee.**

**Herbert MATHIS, Appellant,**

v.

**Edward J. SKEENS, Guardian ad litem, Appellee.**

**Nos. 14596, 14597.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 9, 1959.

Decided April 9, 1959.

§ Mr. Julius W. Robertson, Washington, D. C., with whom Mrs. Dovey J. Roundtree, Washington, D. C., was on the brief, for appellant in No. 14596.

Messrs. Bruce R. Harrison and William A. Smith, Washington, D. C., also entered appearances for appellant in No. 14596.

Mr. William A. Smith, Washington, D. C., with whom Mr. Curtis P. Mitchell, Washington, D. C., was on the brief, for appellant in No. 14597.

Mr. Edward J. Skeens, Washington, D. C., for appellee.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

This case concerns conflicting claims to accidental death insurance benefits. We have before us appeals from a summary judgment entered in favor of Edward J. Skeens, guardian ad litem, and from a denial of motions for summary judgment by Willie Brantley and Herbert Mathis.

The original complaint in this case was filed by Willie Brantley, who claimed to be the surviving spouse and widower of Elizabeth Brantley, also known as Elizabeth Mathis, who, at the time of her death, was an employee of the Federal Government and, as such, was covered by the provisions of the Federal Employees Group Life Insurance Act. The complaint alleged that the decedent met her death accidentally as a result of a gunshot wound, and that at the time of her death she was covered by a policy of insurance issued pursuant to the Act and was entitled to accidental death benefits. The complaint further alleged that Brantley and the decedent were married on April 17, 1932 in the State of South Carolina, and that of this union there was born one child, William Brantley. The complainant further alleged that he was entitled to the proceeds of the group life insurance policy by virtue of the provisions of the Act, which established the surviving spouse as the person to receive

the proceeds in the absence of a named beneficiary, and that no beneficiary had been named by the decedent. Complainant asserted that he had duly made claim on forms supplied for that purpose and that payment had been withheld.

The defendant in the original complaint was Metropolitan Life Insurance Company. In its answer, the defendant admitted that at the time of her death the decedent was insured, and that by reason of her death the sum of $8,000 is payable to the person or persons entitled thereto, this amount including the accidental death benefit. The answer further stated that the defendant had received claims to the proceeds of said policy not only from the plaintiff but also from one Herbert Mathis, he also claiming to be the widower of the decedent. The answer further set forth that, under the provisions of the said policy, if the insured left no widower then the proceeds thereof were payable to her children in equal shares, and that the surviving children of the insured were seven in number. Embodied in the answer of the defendant insurance company was a counterclaim for interpleader, asking that it be allowed to pay the proceeds of said insurance into the registry of the court, there to abide the judgment of the court, and asking that Herbert Mathis and the surviving children of the insured be made parties defendant to the action and be required to interplead their respective claims.

After motion was made to dismiss the counterclaim for interpleader and after the answer of the defendant Mathis had been filed, in which he claimed to be entitled to the proceeds of the insurance by virtue of a common law marriage with the decedent, the court entered its order authorizing the deposit of the $8,000 into the registry of the court and interpleading Mathis and the children of the decedent. A guardian ad litem was appointed for the infant defendants and claims were filed by the plaintiff Brantley, Mathis and the guardian ad litem for the infant children. The adult child of the decedent, while person-

ally served, has not appeared in the proceeding.

The facts disclosed by the record in the case are as follows:

On April 17, 1932, Willie Brantley, appellant, married the deceased insured in a ceremony solemnized in Allendale, South Carolina. One child, William Brantley, was born of this marriage. The parties subsequently separated and, in 1941, Elizabeth Brantley moved to Washington, where she resided until her death in 1956. About January 1942 the decedent began living with Herbert Mathis in the District of Columbia without the benefit of a marriage ceremony. This relationship, which resulted in the birth of six children, continued until 1956, when the decedent met her death as a result of a bullet fired by Mathis. Mathis was indicted for the crime of first degree murder but was subsequently acquitted of that charge.

At some time during the period between 1944 and 1946, Willie Brantley entered a second marriage with one Sarah Gadsen, admittedly without having previously obtained a divorce from Elizabeth Brantley. In connection with the issuance of the second marriage license, Brantley swore that he was "legally capacitated to marry."

Appellant Brantley's cause is founded on the contention that he is the lawful surviving widower of the decedent and thus entitled to the death benefits under the insurance policy, pursuant to 5 U.S. C.A. § 2093, which section specifies the order of payment where no beneficiary is named.

Appellant Mathis denied that Brantley was the lawful surviving spouse, and counterclaimed for payment of the proceeds to himself as the lawful surviving spouse. Appellant Brantley replied and denied this counterclaim.

The answer filed by the guardian ad litem denied that either Brantley or Mathis was entitled to the proceeds of the policy as surviving spouse, and petitioned the court to compel payment of the proceeds to himself in his capacity

as guardian. Both Brantley and Mathis replied and denied this claim. The guardian ad litem then made a motion for summary judgment under Rule 56 Fed.R.Civ.P., 28 U.S.C.A., alleging that there was no genuine issue of fact in controversy. Oppositions to that motion were filed by Brantley and Mathis and, in addition, they both filed motions for summary judgment on their respective behalves.

When the motions came on for hearing, the court found that:

(1) Herbert Mathis was not the surviving spouse of Elizabeth Brantley by alleged common law marital relationship;

(2) Willie Brantley, while legally married to the decedent, entered into a second marriage and is thereby estopped from asserting a claim to the proceeds of the policy in question;

(3) Edward J. Skeens, guardian ad litem, had established a valid claim on behalf of the six minor children and was therefore entitled to summary judgment;

(4) William Brantley, also known as William Bradley, the adult son of deceased, was entitled to judgment in the amount of $1,028.50 representing a one-seventh interest in the net insurance proceeds;

(5) Motions for summary judgment filed by Brantley and Mathis were denied.

Subsequently, Brantley and Mathis filed notices of appeal.

█ We think that, the decedent having been a resident of the District of Columbia for about ten years prior to her death and having been employed by the District of Columbia government, and the insurance having been issued to her here, the contract is one which should be construed under the laws of the District of Columbia.

The law establishing the Federal Employees Group Life Act of 1954 was Public Law 598, ch. 752, 83d Cong., 2d Sess. (1954), and insofar as payment of death proceeds is concerned provides as follows:

5 U.S.C.A. "§ 2093—*Death claims; order of payment.*

"Any amount of group life insurance and group accidental death insurance in force on any employee at the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries as the employee may have designated by a writing received in the employing office prior to death;

"Second, if there be no such beneficiary, to the widow or widower of such employee;

"Third, if none of the above, to the child or children of such employee and descendants of deceased children by representation;

"Fourth, if none of the above, to the parents of such employee or the survivor of them;

"Fifth, if none of the above, to the duly appointed executor or administrator of the estate of such employee;

"Sixth, if none of the above, to other next of kin of such employee entitled under the laws of domicile of such employee at the time of his death.

"If any person otherwise entitled to payment under this section does not make claim therefor within one year after the death of the employee, or if payment to such person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the employee, and any such payment shall be a bar to recovery by any other person."

As the matter comes before us, we find there are three main claims presented: (1) the claim of Willie Brant-

ley; (2) the claim of Herbert Mathis; and (3) the claim of the children. We will proceed to discuss these in the order just stated.

### Claim of Willie Brantley.
### No. 14596.

This appellant contends that the trial court erred in granting the motion for summary judgment filed by the guardian ad litem because the right of the surviving spouse to take the proceeds of an insurance policy under the Federal Employees' Life Insurance Act is declared by that Act, and that, under the facts of this case, there is no legal ground for the application of the doctrine of estoppel to preclude such a surviving spouse from so taking.

■ The proceedings in the District Court were instituted by Brantley, and, as above set forth, all possible parties in interest were interpleaded. The case is to be governed by equitable principles.[1]

Brantley's entire case is premised on his valid marriage to the decedent and the continuation of that relationship until her death. The facts of this case reflect, and they are not controverted by Brantley, that subsequent to his marriage to the decedent, and without obtaining a divorce, he married one Sarah Gadsen. Prior to entering the latter marriage, namely, on October 30, 1944, Brantley appeared before a notary public in Charleston County, South Carolina, and executed an "Affidavit to Obtain [Marriage] License," in which he stated in part: "I do solemnly swear that I am legally capacitated to marry."

In Brantley's motion for summary judgment he was, in effect, asking the District Court to disregard this second marriage and to consider his ten-year adulterous association with Sarah Gadsen as a mere meretricious escapade. The District Court was unwilling, under equitable principles, to do this.

■ Those opposing Brantley's motion relied on the presumption that his second marriage was presumptively valid. Brantley attempts to overcome this presumption in part by conceding, in effect, that he falsely swore that he was capacitated to marry, and that his entire cohabitation with Sarah Gadsen was illegal. Thus, in effect, Brantley's motion is predicated on both perjury and bigamy. We think his claim must be denied because of the clean hands doctrine.

In Mas v. Coca-Cola Co., 4 Cir., 1947, 163 F.2d 505, 508, the court stated:

"Although most cases in which the clean hands doctrine has been applied are cases in which the cause of action itself has arisen out of or been the fruit of unconscionable conduct, we do not understand that it is a prerequisite to the application of the doctrine that the cause of action shall have so arisen. It is sufficient to bar relief that plaintiff has been guilty of unconscionable conduct directly related to the cause of action, such as the fabrication of testimony, the subornation of perjury or other like attempt to perpetrate a fraud upon the court or take an unconscionable advantage of his adversary."

As expressed by Pomeroy:[2]

"* * * [W]henever a party, who, as *actor*, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy."

Brantley's position in this controversy is barred by his unconscionable conduct, and for that reason the District Court's

---

1. Holcomb v. Aetna Life Ins. Co., 10 Cir., 1955, 228 F.2d 75, certiorari denied 1956, 350 U.S. 986, 76 S.Ct. 473, 100 L.Ed. 853; State of Texas v. State of Florida,

1939, 306 U.S. 398, 59 S.Ct. 563, 830, 83 L.Ed. 817, 121 A.L.R. 1179.

2. Pomeroy, Equity Jurisprudence, Vol. 2, sec. 397 (4th Ed.).

action in denying his motion for summary judgment should be affirmed.

■ It should be noted that the court may invoke this maxim irrespective of whether the parties to the action urge it or not. In Bell & Howell Co. v. Bliss, 7 Cir., 1919, 262 F. 131, the court stated that in order to dismiss a suit, the defendant need not have invoked the maxim; the court can act *sua sponte* or of its own motion.

### Claim of Herbert Mathis.
### No. 14597.

This appellant relies primarily on two interrelated grounds, namely:

1. That the District Court erred in ruling that appellant was not the lawful common law spouse of the decedent and therefore not her surviving spouse; and

2. That the District Court erred in granting appellee summary judgment as the pleadings presented a genuine issue of fact, namely, whether all the elements necessary to a common law marriage had been established and whether an impediment to such a marriage had been removed.

In support of his first argument, Mathis contends that in 1946 he and the decedent agreed to become husband and wife, thus satisfying the formal requirements of a common law marriage. He further contends that, if there existed an impediment to this marriage, it was removed when Brantley, prior to the common law marriage, married Sarah Gadsen. Mathis bases this contention on the fact that, when Brantley entered into his second marriage, a presumption arose that his prior marriage to the decedent had been dissolved by either death or divorce.[3] Mathis concludes that this presumption removes the impediment to his common law marriage.

The foregoing, however, is premised on the allegation that the common law relationship commenced sometime during the year 1946, some two years after the Brantley-Gadsen ceremony. If the said common law relationship commenced pri- or to the Brantley-Gadsen ceremony, this would render the above presumption inapplicable.

■ On January 23, 1957, Mathis executed an application entitled "Claim for Death Benefits" in which he stated, in answer to question "Place of Marriage," "living together since Jan, 1942." Immediately to the left of his signature on this application there appears this printed statement:

> "Warning.—Any intentional false statement in this claim or willful misrepresentation relative thereto is subject to punishment by a fine of not more than $10,000. or imprisonment of not more than 5 years, or both (62 Stat. 749 [18 U.S.C.A. § 1001])"

We may conclude from this that Mathis carefully reviewed the application before placing his signature thereon and that all statements contained therein were true. He will not be allowed to state now, in order to avail himself of the presumption, that, although he began living with the decedent in 1942, the claimed common law relationship did not come into existence until 1946. Hence, the District Court found, and properly so, that the common law relationship came into existence at least two and perhaps even four years prior to the Brantley-Gadsen ceremony, and thus no reliance can be placed upon the above discussed presumption.

■ Granting that there is a presumption, upon a second marriage, that a prior marriage has been dissolved, a serious question arises as to whether such a presumption arises in cases where the second marriage is a so-called common law marriage. This court has said in Di Giovanni v. Di Giovannantonio, 1956, 98 U.S.App.D.C. 147, 233 F.2d 26, that this may be doubtful. Granting, *arguendo*, that such a presumption exists in the case of a second and common law marriage, this appellant is not helped. The District Court held that any such presumption as to the validity of

---

3. Wheeler v. Terrell, 1956, 99 U.S.App.D.C. 168, 238 F.2d 29.

the common law marriage was overcome by the facts developed, and we agree.

Of course, considering the motion for summary judgment, the court should view the evidence most favorably to the party against whom it is directed, giving to that party the benefits of all favorable inferences and presumptions that may be drawn from the evidence.[4] Thus the District Court was obliged to view the presumption under discussion (if one existed) most favorably to Mathis, but it was also required to keep in mind the fact that the presumption was rebuttable and that if, from the pleadings, admissions and affidavits on file, such presumption was overcome, the court should disregard it.

In opposition to the presumption, there were introduced in evidence the following affidavits and documents:

(1) Copy of marriage license and certificate executed in 1932 evidencing Brantley's marriage to the decedent.

(2) Affidavit of Willie Brantley stating, in part, that he had never obtained a divorce from decedent.

(3) Certificate under seal executed by R. M. Stearns, Deputy Clerk, United States District Court for the District of Columbia, stating that a search of the District of Columbia court records from 1938 to 1956 failed to disclose a divorce or annulment of the marriage between Brantley and the decedent.

(4) Certificate under seal executed by Olanthe Loadholdt, Clerk of the Court for Allendale County, South Carolina, stating that a search of the records of that court revealed that no decree of divorce or annulment of marriage had ever been granted to either the decedent or Willie Brantley.

In addition to these affidavits and certificates, the court had Mathis' admission that his relationship to the decedent was illegal. Referring again to the application "Claim for Death Benefits" executed by Mathis, we find that not only did he answer the question "Place of Marriage" by stating "living together since Jan. 1942," but he further designated each of the six children born to him and the decedent as "illegitimate." If the children are admitted to be illegitimate, one must conclude that the marriage of which they are issue was illegal.

Viewing all this evidence in the light of Mathis' mere reliance on a bare presumption, the District Court properly found that the presumption was overcome. The presumption being overcome, it necessarily follows that an impediment (the Brantley-Decedent marriage) prevented a valid common law relationship from coming into existence and that, consequently, Mathis can not qualify as surviving spouse.

With regard to the second ground of the Mathis appeal, it is unnecessary to go into the question of whether the formal elements of a common law marriage existed or not, since the District Court properly found that an impediment to such a marriage existed.

■■■ The remaining contentions presented by Mathis can best be disposed of by reciting the rule that mere formal denials or general allegations which are not detailed and precise are insufficient to prevent the award of summary judgment.[5]

Claim of Guardian Ad Litem as to Rights of Children of Decedent.

■■■ The District Court did not err in finding that the six illegitimate children of the decedent and her legitimate child were entitled to the proceeds of the insurance policy.

Having ruled that neither Willie Brantley nor Herbert Mathis is entitled to the proceeds of the policy in suit, we turn to the statute, supra at page 451 of 266 F.2d, which provides:

4. Caylor v. Virden, 8 Cir., 1955, 217 F. 2d 739; Ramsouer v. Midland Valley R. Co., 8 Cir., 1943, 135 F.2d 101.

5. See Shotkin v. Mutual Benefit Health & Accident Ass'n, 2 Cir., 1943, 138 F. 2d 531; Altman v. Curtiss-Wright Corp., 2 Cir., 1941, 124 F.2d 177.

"Third, if none of the above, to the child or children of such employee and descendants of deceased children by representation;"

As the decedent left one legitimate child and six illegitimate children, the question for determination is whether the entire proceeds of the policy are payable to William Brantley, the child of the marriage with Brantley, or whether all of the children should share equally. The District Court held that all seven children should share equally, and we agree.

The case of Foster v. Cheek, 1957, 212 Ga. 821, 96 S.E.2d 545, 549, cited in the annotations to the above Act, involves a claim under that Act. However, there the claim was by an adopted child of the decedent. The court stated:

"We recognize that the Congress can define and in a number of cases has defined, the word 'child' in its acts. However, in the instant case, neither the Federal Group Life Insurance Act nor the insurance contract has defined that term as used in the act in question. There being no Federal law of domestic relations, which is primarily a matter of state concern, * * * we must look to the law of this State in order to determine whether or not the defendant in error in the instant case occupies the position of a 'child' under the provisions of the act above referred to and the policy of insurance involved." 96 S.E.2d at page 549.

■ What is encompassed in the term "child" under the Act is to be determined by the law of the jurisdiction in which the claim arises;[6] here, the District of Columbia. With regard to the descent of personal property, the law of this jurisdiction is that illegitimate children are on equal standing with those born in lawful wedlock insofar as the mother's estate is concerned. When this cause of action arose, Title 18 D.C. Code § 716 (1951), was in effect. That section read in part:

"The illegitimate child or children of any female * * * shall be capable to take * * * from their mother * * * in like manner as if born in lawful wedlock."

We therefore conclude that the law of the District of Columbia extends the term "child" under the Act to include an illegitimate child of a female. It is unnecessary to decide whether illegitimate children of a male are included. It follows that the District Court acted properly in determining that the illegitimate children of the decedent were entitled to their proportionate share of the proceeds of the policy.

■ We find no merit in the contention of the guardian ad litem that the legitimate child of the decedent is not entitled to share in the proceeds of the policy. It is true that he filed no formal claim to the proceeds, nor has he entered an appearance herein. However, he is before the court and the proceeds are now in the registry of the court, awaiting distribution. Further, no cross-appeal appears to have been taken by the guardian ad litem.

■ The guardian ad litem has made claim herein for a fee of $150 for his services in this court. (He has heretofore been allowed a fee for his services in the District Court.) Because of the modesty of the fee requested, and its evident reasonableness, we see no reason in this case for following our usual practice of referring the matter of fee to the District Court for consideration. Accordingly, the fee of $150 is allowed.

The judgment of the District Court is Affirmed.

6. De Sylva v. Ballentine, 1956, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415.