James OLIVER et al., Appellants,

v.

Stewart L. UDALL, Individually and as Secretary of Interior, Appellee.

No. 16613.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 23, 1962.

Decided July 26, 1962.

———◆———

Mr. Sidney Dickstein, Washington, D. C., with whom Mr. David I. Shapiro, Washington, D. C., was on the brief, for appellants.

Mr. Floyd L. France, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Clark, Messrs. Roger P. Marquis and Robert S. Griswold, Jr., Attys., Dept. of Justice, were on the brief, for appellee. Mr. S. Billingsley Hill, Atty., Dept. of Justice, also entered an appearance for appellee.

Mr. Arthur Lazarus, Jr., Washington, D. C., filed a brief on behalf of the Assn. on American Indian Affairs, Inc., as amicus curiae, urging reversal.

Before DANAHER, BASTIAN and BURGER, Circuit Judges.

DANAHER, Circuit Judge.

Our appellants are eight Navajo Indians who reside on the Navajo Indian Reservation.[1] They filed in the District Court "an action for a declaratory judgment to declare section 11.87NH of the Code of Indian Tribal Offenses, 25 CFR § 11.87NH (1953) ('Peyote Violations'), null and void, invalidly authorized and unconstitutional." Appellants had alleged that they are members of the Native American Church, and as such, they consider the use of peyote [2] to be "indis-

[1] Established pursuant to the treaty proclaimed August 12, 1868, 15 Stat. 667.

[2] The complaint alleged that peyote "consists of the tops of a small cactus, botanically identified as Lophophora Williamsii," the principal ingredients being alkaloids, of which the most important is mescaline. When taken or administered in accordance with the customs, rites and rituals of the church, the complaint alleges, "peyote is not a substance deleterious to human life or health, is not habit-forming and does not result in addiction."

The Secretary's answer states that he has taken no position and made no findings as to whether peyote is or is not

pensable to their prayers, rites and ceremonies." They further alleged that due to certain actions of the Secretary of the Interior,[3] they were unlawfully deprived of the use of peyote. Their motion for summary judgment was denied, the Secretary's cross motion was granted and the complaint was dismissed.

The Secretary of the Interior on June 2, 1937 approved a law and order Code of Tribal Offenses, applicable on Indian reservations. At that time no mention was made of peyote. On June 3, 1940 the Navajo Tribal Council adopted its Resolution No. CJ–1–40 which recited in part that "during the last few months great quantities of peyote" had been brought into the Navajo reservation; the use of peyote is not connected with "any Navajo religious practice" and is harmful and foreign to the Navajo traditional way of life. The Resolution thereupon embodied a section denouncing as "an offense against the Navajo Tribe" the sale, use or possession within the Navajo country of the "bean known as peyote."

The Acting Secretary of the Interior on December 18, 1940 approved the Tribal Resolution, and added to the Secretary's 1937 law and order Code a subsection which read:

"*Peyote violations. Any Indian* who shall introduce into the Navajo country, sell, use or have in his possession within said Navajo country, the bean known as peyote, shall be deemed guilty of an offense and upon conviction thereof shall be sentenced to labor for a period not to exceed 9 months, or a fine not to exceed $100, or both." (Emphasis added.) [See 25 C.F.R. § 11.87NH (1958)]

That action of the Acting Secretary on December 18, 1940 was attacked in the appellants' first prayer for relief now before us which reads:

"(1) That the action of defendant's predecessor on December 18, 1940 in approving Resolution No. CJ–1–40 as adopted by the Navajo Tribal Council on June 3, 1940 be declared null and void, and invalidly authorized and in violation of the First Amendment to the Constitution of the United States."

We have concluded that the appellants have failed to show the existence of a present case or controversy with respect to the Secretary's action in 1940. That action was superseded in 1959 and so has been rendered moot because of facts and circumstances to which we next advert.[4]

On January 6, 1959, the Navajo Tribal Council by Resolution No. CJA–1–59 adopted as tribal law the law and order Code or regulations of the Department of the Interior, with amendments, which until that time had been generally applicable to Indian tribes. As authorization for its action the Tribe had relied on the Secretary's regulation, 25 C.F.R. § 11.1(e) (1958) which reads:

"Nothing in this section shall prevent the adoption by the tribal council of ordinances applicable to the individual tribe, and after such ordinances have been approved by the

---

deleterious or habit forming, and avers that "Congress has included peyote within its definition of the term 'habit-forming narcotic drug,' 42 U.S.C. sec. 201(j)." [That section includes, inter alia, opium, with its alkaloid derivatives morphia, heroin and codeine; coca leaves and the derivative cocaine, Indian hemp and its derivatives "and peyote in its various forms."]

3. Originally named as defendant in the District Court was Fred A. Seaton. On appellants' motion the District Court substituted the incumbent, Stewart L. Udall, Secretary of the Interior.

4. The appellants alleged that the Secretary in June, 1960, had rejected their demand that he revoke his predecessor's approval of the 1940 Tribal Resolution. Thus appellants' second prayer for relief must likewise fall insofar as appellants asked: "(2) That the action of defendant in failing and refusing to revoke, rescind or withdraw the prior approval granted to Resolution No. CJ–1–40 be declared null, void, illegal and in violation of the First Amendment to the Constitution of the United States and that defendant's action be declared arbitrary and capricious * * *."

Secretary of the Interior they shall be controlling, and the regulations of this part which may be inconsistent therewith shall no longer be applicable to that tribe."

In so adopting as tribal law all those sections which might be applicable to the Navajo Indians, the Navajo Tribe, by its own action, had included specifically 25 C.F.R. §§ 11.76NH–11.87NH (1958). Thus made part of the tribal law was section 11.87NH, supra, *"Peyote violations."*

The Secretary on February 11, 1959 approved that action by the Navajo Tribe, thus and thereby consenting to the supersession of 25 C.F.R. Part 11. The Secretary's law and order Code was no longer to apply to the Navajo Tribe. In necessary consequence the only prohibition thereafter to be applied against the introduction by an Indian into the Navajo Indian reservation, or the sale or the use of peyote by an Indian "within said Navajo country" was to be found in what the Navajo Tribe itself had adopted as tribal law.

Appellants' complaint did not challenge that 1959 approval by the Secretary. They would have had us say that the 1940 approval by the Secretary was an unlawful act, beyond his powers in that Congress had never authorized the Secretary to take that step. But 25 U.S.C. A. § 2 provides:

"*Duties of Commissioner.* The Commissioner of Indian Affairs shall, under the direction of the Secretary of the Interior, and agreeably to such regulations as the President may prescribe, have the management of all Indian affairs and of all matters arising out of Indian relations."

Appellants, no doubt, would want us to say with respect to the Secretary's 1959 approval of the Tribal action that the Secretary, in effect, has unlawfully, in violation of appellants' First Amendment rights, prohibited the free exercise of religion by these appellants. But the Secretary has done no more than approve action which the Navajo Tribe was entitled to take. Moreover, his affidavit of record discloses that "neither he nor any employee of the Department of the Interior acting under his direction or supervision has threatened or intends to threaten the plaintiffs, or any of them, with arrest, fine or imprisonment because of their alleged use of peyote on the Navajo Indian Reservation." Cf. Poe v. Ullman, 367 U.S. 497, 501, 507, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). It may be noted that First Amendment rights were asserted in behalf of the Native American Church,[5] of various named plaintiffs as its members, and of all others similarly situated, in Native American Church v. Navajo Tribal Council.[6] There the District Court refused to enjoin enforcement of the tribal ordinance banning peyote. The Court of Appeals affirmed a judgment dismissing the complaint.

■ While it is so that Congress retains paramount authority to legislate for and enforce its laws on all the tribes[7] in certain respects, only in special in-

---

5. The Secretary's answer avers that he is "without knowledge or information sufficient to form a belief as to the truth" of certain allegations concerning the church, its purposes, objectives and practices.

Not all religious "practices" are beyond the reach of the law. Reynolds v. United States, 98 U.S. 145, 166–167, 25 L.Ed. 244 (1879); Cleveland v. United States, 329 U.S. 14, 20, 67 S.Ct. 13, 91 L.Ed. 12 (1946).

It would appear that "The Native American Church" was originally incorporated under the laws of Oklahoma, October 10, 1918. LA BARRE, THE PEYOTE CULT 170 (1959). The author notes in his preface that "there are at present over one thousand biblographic items on the ethnography of peyotism and related subjects."

6. 272 F.2d 131 (10 Cir. 1959).

7. Lone Wolf v. Hitchcock, 187 U.S. 553, 23 S.Ct. 216, 47 L.Ed. 299 (1903); cf. United States v. Quiver, 241 U.S. 602, 604, 36 S.Ct. 699, 60 L.Ed. 1196 (1916).

stances has it done so.[8]   Otherwise, as the Supreme Court so recently stated:

"The cases in this Court have consistently guarded the authority of Indian governments over their reservations. Congress recognized this authority in the Navajos in the Treaty of 1868, and has done so ever since. If this power is to be taken away from them, it is for Congress to do it."[9]

We have interpolated the foregoing discussion only because appellants in their complaint had asked "for such other and further relief which to this Court may seem just and proper." It is our view that the Secretary's approval of the tribal action in 1959 was entirely in keeping with that abstinence from federal intervention in the internal affairs of an Indian tribe which the law clearly requires. The Secretary had simply recognized the valid governing authority of the Tribal Council.[10]

We conclude that the appellants have failed to present more than an abstract question, and in such a situation, the District Court in any event, in the exercise of its discretion might properly have withheld the entry of a declaratory judgment.[11] Relief had been sought against the Secretary, both individually and officially. Since in our view the Secretary acted properly as an official, it follows that the District Court correctly entered summary judgment and thereupon dismissed the complaint. The Secretary was entitled to judgment as a matter of law.[12]

Affirmed.

8. See, e. g., 18 U.S.C. §§ 1152–53 (1958); and see Kake Village v. Egan, 369 U.S. 60, 63, 82 S.Ct. 562, 7 L.Ed.2d 573 (1962).

9. Williams v. Lee, 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); cf. Barta v. Oglala Sioux Tribe of Pine Ridge Reservation, 259 F.2d 553 (8 Cir. 1958), cert. denied, 358 U.S. 932, 79 S.Ct. 320, 3 L.Ed.2d 304 (1959); Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8 Cir. 1956); compare Metlakatla Indians v. Egan, 369 U.S. 45, 50–54, 82 S.Ct. 552, 7 L.Ed.2d 562 (1962).

10. Implicit in the 1868 treaty with the Navajo Tribe "was the understanding that the internal affairs of the Indians remained exclusively within the jurisdiction of whatever tribal government existed. Since then, Congress and the Bureau of Indian Affairs have assisted in strengthening the Navajo tribal government and its courts." Williams v. Lee, supra note 9, 358 U.S. at 221–222, 79 S.Ct. at 271; cf. Kake Village v. Egan, supra note 8.

11. Cf. Poe v. Ullman, 367 U.S. 497, 81 S. Ct. 1752 (1961); Public Affairs Press v. Rickover, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962); Alabama State Federation of Labor v. McAdory, 325 U. S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945).

12. Cf. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 693, 695, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).