:Stewart L. UDALL, Secretary of the Interior, Appellant,

v.

Norman M. LITTELL, Appellee.

No. 18338.

United States Court of Appeals District of Columbia Circuit.

Argued May 5, 1964.

Decided Aug. 13, 1964.

Petition for Rehearing Denied Oct. 16, 1964.

Mr. Roger P. Marquis, Atty. Dept. of Justice, with whom Asst. Atty. Gen. Ramsey Clark, Messrs. Herbert Pittle and Thomas L. McKevitt, Attys., Dept. of Justice, were on the brief, for appellant.

Mr. Frederick Bernays Wiener, Washington, D. C., with whom Messrs. John F. Doyle and William R. Rafferty, Washington, D. C., were on the brief, for appellee.

Before DANAHER, BURGER and WRIGHT, Circuit Judges.

DANAHER, Circuit Judge:

The appellee has been general counsel and claims attorney of the Navajo Tribe since August, 1947. His original contract had run for ten years. Effective as of August 8, 1957, a second contract to expire August 7, 1967, was entered into between the appellee and the Navajo Tribe and was approved by the Secretary

of the Interior.[1] In November, 1963 the Secretary purported to suspend personal performance by the appellee under the 1957 contract and gave notice that the "contract will be terminated as of December 1, 1963" unless the appellee "can adduce convincing evidence" that the Secretary's conclusions as to suspension and termination "are unwarranted." At the same time, the Secretary purported to withdraw and rescind his approval of the contract and of at least eleven various amendments, previously agreed to by the Navajo Tribal Council and then approved by the Secretary. The appellee thereupon instituted suit to enjoin the Secretary from taking the proposed action. The District Court entered its order restraining the Secretary and his subordinates from terminating the appellee's contract with the Navajo Tribe, from suspending its operations or from withholding[2] payments due thereunder.[3] The Secretary has brought this appeal.

The Secretary argues that "The issue here is the power of the Secretary to act under any circumstances." He contends that he has general and "complete power to supervise and regulate all Indian-White relationships except as expressly limited by Congress." Pointing to the fact that he had already approved the 1957 contract and eleven subsequent amendments, he argues that no "reason appears why that supervision can be exercised only by disapproval of suggested amendments and not by withdrawal of approval earlier given when circumstances require it."

In opposition to the appellee's motion for a preliminary injunction the Secre-

tary filed the affidavit of one Raymond Nakai from which it appears that Tribal political activities were in some measure involved. Nakai as chairman of the Navajo Tribal Council averred as of November 26, 1963 that in a recent election the activity of the Tribal attorneys had been a major issue because "Norman M. Littell exercised an ever-increasing influence over the affairs of the Navajo Tribe and deeply involved himself in most of the basic decisions made by the Tribe." He appended to his affidavit a telegram sent to him by Littell who stated that "The general counsel and legal staff are not your personal attorneys to do your bidding, right or wrong. We serve the Tribe in discharge of duties described in the attorney contract and in the Tribal Code." From countercharges and recriminations appearing in the exhibits it seems clear enough that Littell suspected Nakai of having instituted a cabal which the general counsel deemed detrimental to the best interests of the Tribe. Other material of record suggests that certain individuals, including Nakai and perhaps attorneys of his choosing, had their own reasons for seeking to oust the appellee.[4]

The Secretary on brief states that "The matter came to a head on November 1, 1963" when the Secretary informed the appellee of the suspension of his personal performance under the attorney contract and of the intended termination of the contract.

The appellee has challenged the Secretary's assertion of power. He points to the status of the Tribe as a self-governing

1. See 25 U.S.C. § 81 (1958).

2. See 25 U.S.C. § 82 (1958).

3. Judge McGarraghy concluded, in part:
   "The action taken by the defendant Secretary on November 1, 1963, and the further action imminently threatened to be taken by him on December 1, 1963, violates the rights of the plaintiff under his approved contract with the Navajo Tribe, and are in excess of any power or authority vested in the defendant Secretary by law."

4. The appellee points to record material tending to show that when the appellee was first employed in 1947, the Navajos were one of the most poverty-stricken tribes in the country. Today they are probably the wealthiest. The Secretary on brief, with record references, informs the court that the Tribe has extensive resources "including $80,000,000 on deposit in the United States Treasury, and has a monthly income from mineral leases of some $800,000 to $1,000,000."

entity, as recognized by the Secretary himself who tells us on brief:

"The Tribe governs itself without regard to the laws of the states where the reservation is situated. Williams v. Lee, 358 U.S. 217 (1959). This is accomplished under a Tribal Code which has been approved by the Secretary of the Interior. Cf. Oliver v. Udall, 113 U.S.App.D.C. 212, 306 F.2d 819 (1962), cert. den., 372 U.S. 908."

Appellee's complaint in the District Court had alleged that the Tribal Council "is the governing body of the Navajo Tribe and consists of 74 delegates." Appellee's affidavit in support of his motion for preliminary injunction set forth a detailed account of various relationships, whether by contract and amendments thereto, resolutions of the Navajo Tribal Council pertaining to the same or correspondence and memoranda pertinent to the merits of the controversy. Among the exhibits is the text of the 1957 agreement, identified as "ATTORNEY CONTRACT." It is clear from the document that the attorneys were to "perform the duties required of them under this contract upon the request and at the direction of the Chairman of the Navajo Tribal Council, subject to such instructions as he may receive from time to time from the Advisory Committee or the Tribal Council." The general counsel was bound to "report to the Tribal Council at any regular or special meeting on any matters pertaining to the legal affairs of the Tribe when in his opinion or that of the Chairman, the Advisory Committee, or the Tribal Council, the best interests of the Tribe so require." The contract recited that it was executed pursuant "to the authority of the Navajo Tribal Council and the Commissioner of Indian Affairs," to be deemed in full force and effect upon approval by the Commissioner, as of August 8, 1957. The contract provided for "General Counsel Services" for the "said Tribe of Indians," but it also provided for "Claims Services" in "investigating, formulating and prosecuting claims of the said Indians against the United States * * *" specifically designating the appellee as "Claims Attorney for the Tribe." Certain separate and distinct claims against the United States were listed as then pending before the Indian Claims Commission.[5] Approved in behalf of the Secretary pursuant to "Secretarial Order No. 2508, as amended (17 Fed.Reg. 1570, pursuant to Section 2103 of the Revised Statutes of the United States (25 USC 81)," the contract pertinently contained a termination clause which reads as follows:

"12. *Termination:* (a) The Tribal Council may terminate this contract *for good cause shown* in respect to any one or all of second parties' services as General Counsel after giving sixty days' notice to any of second parties in respect to which termination is sought, *the said termination to become effective upon approval* of the Commissioner of Indian Affairs, PROVIDED, HOWEVER, that in the event of *disagreement between the parties as to the sufficiency of the cause, the question shall be submitted to the Secretary of the Interior.* In such event, the parties of the second part or any one of them so terminated, shall receive compensation on the basis of the annual retainer provided for in Paragraph 4, above, prorated to the date of termination, together with such sums as may be properly due for expenses incurred prior to the date of termination; PROVIDED, FURTHER that if the services of Norman M. Littell or C. J. Alexander as General Counsel are so terminated by request of first party, the said Littell and Alexander and their assigns, if any, shall have the option to terminate the contract in its entirety, subject, however, to

---

5. Undoubtedly relevant ultimately to a decision on the merits as to what services came within which of the two categories, we need not at this point do more than note that the parties understood a definite distinction to exist between general counsel services and claims services.

the provisions of Paragraph (b) hereof." (Emphasis added.)

The District Court specifically found:

"5. The Navajo Tribal Council has neither terminated nor suspended its contract with the plaintiff, nor has it authorized or directed or requested the defendant or any other individual or group to do so.

"6. The power to select attorneys to represent the Navajo Tribe is vested in the Navajo Tribal Council by 2 N.T.C. § 1173(c), and neither Chairman [6] of that Council nor its Advisory Committee [7] have any such power. 2 N.T.C. §§ 284, 341–344."

Finding 7 discloses that in June 1963, Raymond Nakai, then Chairman of the Council, requested the Secretary to terminate the appellee's employment as general counsel and claims attorney. In Finding 8 the judge noted that Nakai desired to substitute other attorneys for the appellee.[8] There is no provision in the contract and none in the several amendments which in terms may be read as authorizing later termination by the Secretary once his approval shall have been granted pursuant to 25 U.S.C. § 81.

The Secretary thus must argue in effect, that as of November 1, 1963 he, regardless of the fact that the Tribal Council had not acted, was free to initiate against the appellee whatever "charges" he might decide to assert. Then on the basis of such charges, he next had authority to suspend the appellee's "personal performance under the Attorney Contract" and to announce its termination as of December 1, 1963, unless "in the interim, you can adduce *convincing* [to the Secretary's satisfaction] evidence that the [Secretary's] *conclusions justifying* [according to him] suspension and termination are unwarranted." (Emphasis added.)[9]

The Secretary can point to no statute applicable here which confers upon him any such authority. In October, 1963 the Department's solicitor by memorandum to the Secretary had advised him that the "Navajo Tribal Code, title 2, section 1173 (c) provides:

" 'No person shall be engaged to render services which are subject to the requirements of section 2103 of the Revised Statutes of the United States (25 U.S.C. 81) without the prior individual approval of the Navajo Tribal Council.' "

The solicitor then commented:

"Thus it is clear that authority to act effectively for the Navajo Tribe with respect to the employment of an attorney under 25 U.S.C. 81 is lodged in the Navajo Tribal Council. The *Advisory Committee* of the tribal council *has no authority to speak effectively for the tribe in such matters.*" (Emphasis added.)[10]

The solicitor further discussed a resolution of the Advisory Committee which had charged the appellee "with diverting

---

6. Elected for the performance of executive duties for a 4-year term (2 N.T.C. § 281).

7. Appointed by the Chairman, the nine members of the Advisory Committee hold monthly meetings and are subject to removal by the Chairman for certain derelictions without Council approval but otherwise removal is subject to approval by the Council.

8. See note 4 *supra.*

9. In addition to our paraphrase of the substance of the Secretary's letter of November 1, 1963 addressed to the appellee, the Secretary informed the appellee that his prior approval of the contract and all amendments thereto "is hereby rescinded and withdrawn."

10. In this case, the District Judge's Finding 9 reads as follows:

"9. In October 1963, after the defendant Secretary had been advised by the Solicitor of the Interior that only the Navajo Tribal Council could terminate plaintiff's contract * * * the defendant Secretary suggested 'a constructive solution' of the controversy to the plaintiff, by which he meant that the plaintiff should resign as General Counsel of the Navajo Tribe * * *. At the same time, the defendant Secretary urged that the plaintiff should continue as the Navajo Tribe's Claims Attorney * * *."

the services of attorneys employed for general counsel services to assist in the handling of claims work without authority to do so."

While the general counsel services were rendered upon an annual salary basis, compensation for claims work depended upon a contingent percentage plan related in part to "the value of the property recovered, saved, or obtained."

The solicitor's memorandum discussed, *inter alia*, a case entitled Healing v. Jones.[11] Whether that action should have been classified as a "claims"[12] case or considered part of the general counsel's normal service seems to have been in question.[13]

The solicitor's memorandum of advice discussed other details not immediately pertinent. Clearly pointed out, however, was a remedy available *"to the Tribe"* under the termination clause, *supra.* If that clause be invoked by the Tribe "you would be fully justified in approving *the action of the Tribal Council,"* the solicitor stated. He added that indeed, the Secretary "if unauthorized payments are discovered" would be fully justified in initiating the cancellation procedure by *recommending Tribal Council action,* if you desire to do so." [14]

In Oliver v. Udall [15] the Secretary successfully contended before us that a challenged resolution of the Tribal Council reflected the "inherent sovereign power of the Tribe." His later approval of the resolution did not result in an exercise of federal power. To demonstrate the Tribe's power to enter into a contract, he argued on brief that "the Tribe can lease its own property subject to the approval of the Secretary. That does not mean the power to lease Tribal property is in the Secretary. The power of disposition, or the adoption of Tribal law and order resolutions is in the Tribe."

11. Congress in the Act of July 22, 1958, a special jurisdictional statute, had authorized this action, 72 STAT. 403, while Jones was chairman of the Tribal Council.

In 1958, Senators Hayden and Goldwater had co-sponsored S. 692 to declare certain lands to be held by the United States in trust for the Hopi Indians and such other Indians as "heretofore have been settled thereon by the Secretary of the Interior." (See Exec. Order, December 6, 1882). The Navajo and the Hopi Tribes were authorized to commence or defend an action against each other for the purpose of determining their respective rights and interests in those lands. See H.R.REP. No. 1942, 85th Cong., 2d Sess.; 104 Cong.Rec. 13196, July 9, 1958. Healing v. Jones, *infra* note 12, followed.

12. The Department of Justice challenged the jurisdiction of the court to hear the case and otherwise sought to protect the Government against the "claims" of the contending parties. Jones for the Navajo Tribe successfully opposed the position of the Government. Healing v. Jones, 174 F.Supp. 211 (D.Ariz.1959). After extensive pretrial proceedings, the case was disposed of by a special three-judge court. The exhaustive opinion of Circuit Judge Hamley occupies some sixty-seven pages of the printed reports as he traced the history of the problems presented and explored the contentions of the respective tribes with regard to the "1882 Reservation." The interest of Congressman, later Secretary, Udall was noted by Judge Hamley, 210 F.Supp. at 189.

It is reasonable to deduce that preparation and presentation of the case by respective counsel must have entailed great skill and professional attainments of a high order. Substantial advantages were gained by the Navajo Tribe. Healing v. Jones, 210 F.Supp. 125 (D.Ariz. 1962). The Supreme Court affirmed, 373 U.S. 758, 83 S.Ct. 1559, 10 L.Ed.2d 703 (1963). The appellee was of counsel at all times, according to the official reports.

13. By amendment No. 11 to the Navajo Tribal Attorney Contract, the cases of Healing v. Jones and Navajo Tribe v. State of Utah had been added to the "Claims" specified in § 4(b) of the 1957 contract. The amendment was approved for Secretary Udall as of July 26, 1962 by Assistant Secretary Carver.

14. Emphasis added in this paragraph by the court.

15. 113 U.S.App.D.C. 212, 306 F.2d 819 (1962), cert. denied, 372 U.S. 908, 83 S. Ct. 720, 9 L.Ed.2d 717 (1963).

We are persuaded that the solicitor herein correctly recognized that the Tribe was the appellee's client, just as he properly advised the Secretary that "The governing body of the Tribe is the Tribal Council." The Tribe through that Council had validly engaged the appellee as its attorney under a contract which only the Tribal Council might terminate agreeably to the provisions of that instrument, *supra,* page 5. We have been shown no basis upon which the Secretary rather than the Tribal Council might declare the contract at an end. We have discovered no source of power—and none has been cited to us—which vests in the Secretary a predicate for rescission by him of his previous approval granted pursuant to 25 U.S.C. § 81 (1958).

We voice no opinion on the merits. We say only that the issuance of the preliminary injunction in this unique situation was a matter addressed to the sound discretion of the trial court.[16] We find no abuse on this record. We may note that the District Court clearly contemplated that the Secretary simply lacked authority to terminate the Attorney Contract in the manner attempted and to rescind his earlier approval of the contract and the amendments thereto. The injunction is surely temporary in terms, and in effect is operative only "until the further order of [the District Court] and pending final hearing of this cause."[17] We need not spell out additional details covered by the District Court's order, designed in part, at least, to preserve the District Court's jurisdiction. Since a full trial is available, we refrain from comment on the possible applicability of 25 U.S.C. § 82 (1958).

Affirmed.

WRIGHT, Circuit Judge, dissenting.

The Secretary here makes serious charges of imposition and overreaching against the appellee concerning his dealings with the Indians. Based on these charges, and acting on the request of the Tribal Chairman and the Advisory Committee of the Navajo Tribal Council, the Secretary has withdrawn his approval of appellee's contract with the Indians; and, unless the charges are disproved, he proposes to terminate appellee's contract as General Counsel for the Indians. The temporary injunction[1] issued by the District Court on application of appellee would permit him to continue dealing with the Indians under the terms of the contract in spite of the Secretary's allegations of fraud.

It appears to me that a court of equity should not put itself in a position of preserving a relationship with Indians charged by the Secretary of the Interior to be fraudulently exploited, at least until a hearing is conducted on the validity of the charges. The equitable doctrine of clean hands goes to the heart of the case. Until that issue is resolved, a court of equity should not grant equitable relief. Brantley v. Skeens, 105 U.S.App.D.C. 246, 251–252, 266 F.2d 447, 452–453 (1959). See 2 POMEROY, EQUITY JURISPRUDENCE § 397 (5th Ed. 1941).

I would vacate the injunction and remand this case to the District Court for a hearing on the Secretary's charges.

---

16. Alabama v. United States, 279 U.S. 229, 231, 49 S.Ct. 266, 73 L.Ed. 675 (1929).

17. We take judicial notice that on June 29, 1964, the District Court entered its order extending until September 1, 1964 the time within which the Secretary may file his answer or otherwise plead with respect to the pending complaint.

1. Although only a temporary injunction was issued, the District Court's opinion decides the case on the merits.