CHINLE DISTRICT COURT

November 19, 1981

No. CH-CV-205-81

OPINION AND ORDER

In the MATTER OF the Interest of:
Emerson Daniel TSOSIE, JR.
Eugene Darryl TSOSIE,
Emery Douglas TSOSIE,
Evonne Danielle TSOSIE, Minor.

Honorable Homer Bluehouse, Judge presiding.

I.

BACKGROUND TO THIS OPINION AND ORDER

This is a simple little case which has become complicated due to the refusal of the Bureau of Indian Affairs to enforce an order for a wage execution.

Very simply, on October 13, 1981 this court ruled upon a petition for a writ of garnishment to obtain payroll deductions for child support from the wages of Emerson D. Tsosie, who is an employee of the Bureau of Indian Affairs. The order issued by the court was straightforward, and it required a deduction of $300 per month from Mr. Tsosie's wages "until further order of the court."

The order was forwarded to the Bureau of Indian Affairs, and the Branch of Employee Data and Compensation of the Bureau, located in Albuquerque, forwarded the court's order to the Field Solicitor, who is also located in Albuquerque.

The Field Solicitor gave his opinion as to the enforcibility of our order, purportedly acting under the requirements of 5 C.F.R. Sec. 581.305(a)(1). That regulation requires Federal government agencies to decline legal process if "It does not, on its face, conform to the laws of the jurisdiction from which it was issued." In other words the government is going to tell us, the jurisdiction making the order, if it complies with our own laws.

The Field Solicitor, Lotario D. Oretega, Esq., prepared a memorandum opinion about our orders on October 28, 1981. The opinion acknowledges that under 42 U.S.C. Sec. 659 there is an obligation to respect legal process to enforce a child support obligation. However the opinion then goes on to state the general principle of law that garnishment is a "purely statutory proceeding" giving an extraordinary remedy to a creditor and notes that there is no specific provision in our code as to garnishment. Finally the opinion concludes:

"In my opinion, the Navajo Tribal Court's Order is not cognizable under 42 U.S.C. Sec. 659 since garnishment, or similar legal process, is not provided for in the Navajo Tribal Code."

On the basis of Mr. Ortega's opinion, on November 4, 1981 the Chief of the Branch of Employee Data and Compensation in Albuquerque returned the court order and declined to enforce it.

This court is confronted with a situation in which its lawful order has been denied enforcement by an agency of the United States Government whose duty it is to protect tribal government and respect its laws. Therefore this opinion will state the laws of the Navajo Nation supporting the validity of its prior order, state the obligation of the Bureau of Indian Affairs to enforce that order and make appropriate orders to enforce it.

II.

THE AVAILABILITY OF A WRIT OF GARNISHMENT AS A REMEDY

There has been some discussion as to whether garnishment is a remedy which is available to enforce judgments of the Courts of the Navajo Nation. Indeed the Judges of the Navajo Nation, at a regular meeting held on July 2, 1981, discussed this question at length and came to an informal consensus that Navajo law does indeed provide for garnishment.

The problem is partly confused by customary usages in the region. (The jurisdiction of our courts of course emcompasses portions of New Mexico, Arizona and Utah). In New Mexico, for example, one obtains a judgment and then obtains a writ of garnishment. See, e.g. Lee v. Perry, 2 Indian L. Rep. 96, No. 75-059 (D.N.M., May 8, 1975). In other jurisdictions a judgment may be enforced simply by means of a wage execution.

The plaintiff chose the garnishment procedure to enforce her judgment. What is the procedure called "garnishment?"

"The term 'garnishment' denotes a proceeding by a creditor to obtain satisfaction of the indebtedness out of property or credits of the debtor in the possession of, or owing by, a third person. The person instituting the proceedings is generally referred to as the creditor or plaintiff, the person indebted to the creditor is called the debtor or defendant, and the person holding the property and who is indebted to the debtor is called the garnishee.

Garnishment is said to be, in effect, an action by the defendant against the garnishee for the use of the plaintiff, or a suit by the defendant in which the plaintiff is subrogated to the rights of the defendant, and it has been termed a compulsory novation. . . ." 6 Am.Jur.2d, Attachment and Garnishment Sec. 2.

It is true that garnishment generally did not exist at common

law, but the remedy is one which exists by virtue of local law, and the law of the forum determines the validity and regularity of the proceedings (not the local field solicitor). Id. Secs. 9, 8.

Before going on to discuss whether garnishment is a remedy which exists under our law and whether the order was valid under our law, it should not be noted that child support could be enforced in this case by means of a wage execution under our execution rule and statutes. See 30 Am.Jur.2d, Executions Sec. 137.

Wage executions are of course supportable under a writ of execution. 7 N.T.C. Sec. 705 provides:

> "The party in whose favor a money judgment is given by the Courts of the Navajo Tribe may at any time within five years after entry thereof have a writ of execution issued for its enforcement. . . ."

This section alone would be sufficient to support the order of this court. However it is not the only section upon which to found an order to execute upon wages.

A writ of garnishment is perfectly proper under 7 N.T.C. Sec. 255, which provides:

> "The Trial Court shall have the power to issue any writs or orders necessary and proper to the complete exercise of its jurisdiction." (Emphasis supplied).

This court has granted a judgment. The court has jurisdiction over the parties and the subject matter of the suit. Does that now mean that this court cannot enforce its jurisdiction by making certain the judgment is carried out? That would be an absurd result, and the law abhors absurd results.

These two sections are not the only ones which provide a remedy. 7 N.T.C. Sec. 601(a) gives the Judges of the Trial Court the authority to adopt rules of pleading, practice and procedure. We have adopted the following rules which are applicable to this case:

> "Satisfaction of judgment shall be by writ of execution except where the judgment is for child support, in which case the failure to pay may also be punished by contempt after a show cause hearing. . . . "Rule 13, Rules of Civil Procedure.

> "The Court shall have the power to order any relief required after the determination of the facts, and law, whether such relief be equitable or legal in nature." Rule 23, Rules of Civil Procedure.

These rules, coupled with the statutes cited above, give this court the full authority to create a plastic remedy, appropriate to the enforcement of its judgments.

Therefore I hold, as a matter of the laws of the Navajo Nation, that the order of this court dated October 13, 1981 is valid and regular

and it does, for the purposes of 5 C.F.R. Sec. 581.305(a), conform to the laws of the Navajo Nation on its face.

## III.

## ENFORCEMENT OF THE ORDER BY THE BUREAU OF INDIAN AFFAIRS

There are three factors to be considered on this question: 1) Is the order entitled to enforcement under the United States statute in question?; 2) Is the order entitled to full faith and credit?; and 3) Must the Albuquerque office of the Bureau of Indian Affairs respect the order?

### A. UNDER 42 U.S.C. Sec. 659 & RELATED STATUTES

42 U.S.C. Sec. 659 is nothing more than a consent by the United States subjecting it to all legal process for the enforcement of child support and alimony judgments. The consent is given to all "legal process," which includes any writ, order, summons or other process in the nature of garnishment issued by a court of competent jurisdiction. 42 U.S.C. Sec. 662(e). In other words, it does not matter what you call the court order or what the statutory or common law basis for it may be, the order is enforcible because it is in the "nature" of garnishment, that is obtaining the funds which are payable on the government's debt to an employee for wages. Therefore under the applicable Federal statutes themselves this court's order is proper.

### B. FULL FAITH AND CREDIT

In the case of Standley v. Roberts the Court of Appeals noted, speaking of Indian Nations,

> "The judgments of these nations, in cases within their jurisdiction, stand on the same footing with those of the courts of the territories of the Union and are entitled to the same faith and credit." 59 F. 836, 845 (C.C.A. 8, 1894).

In another case the Court of Appeals discussed the powers of the Cherokee Nation and said:

> "It may maintain its own judicial tribunals, and their judgments and decrees upon the rights of the persons and property of members of the Cherokee Nation as against each other are entitled to all the faith and credit accorded to the judgments and decrees of territorial courts." Raymond v. Raymond, 83 F. 721, 722 (C.C.A. 8, 1897).

The Supreme Court has recently recognized that tribal court judgments "have been regarded in some circumstances as entitled to full faith and credit in other courts." Santa Clara Pueblo v. Martinez, 56 L.Ed.2d 106, 98 S.Ct. 1670, 1681 n.21 (1978). The Supreme Court there cited

Mackey v. Coxe with approval, which stands for the same proposition. 59 U.S. (18 How.) 100, 15 L.Ed. 299 (1855). Therefore, since this court holds its judgment to be proper under Navajo law, the order is enforcible and must be respected by the United States.

## C. RESPECT OF THE ORDER BY THE BUREAU OF INDIAN AFFAIRS

The concept that tribal court orders should be accorded full faith and credit has long been accepted as a rubric of Indian Affairs law by the Bureau of Indian Affairs. In the text written by the Bureau's great solicitor, Felix S. Cohen, that concept is fully and agressively set forth as basic Indian law. Cohen, Handbook of Federal Indian Law, p. 15 (U.N.M. Ed.). It is also a part of the rubric of Indian affairs law that the B.I.A. must follow its own statutes, regulations and internal policies. Morton v. Ruiz, 415 U.S. 199 (1974) (Snyder Act and appropriations); and Stump v. Andrus, No. CV-76-74-HG (D. Mont., December 5, 1977) (BIAM provisions).

Not only is the general Bureau policy one of giving "full faith and credit" to tribal court judgments, but the policy requires Bureau officials to enforce tribal court judgments. On September 8, 1938 Solicitor Nathan R. Margold (author of the lead opinion, "Powers of Indian Tribes," 55 I.D. 14, October 25, 1934) rendered an opinion entitled "Transition from Indian to Tribal Court." That opinion was based upon a sitution where the Cheyenne River Sioux Tribal Council adopted a tribal law and order code and a question arose as to a prior child support judgment. Solicitor Margold advised that the prior judgment under Bureau regulations would not be impaired by the new code and that the Department could enforce that existing judgment by requiring the Indian defendant to make child support payments. Margold advised that the superintendent of the reservation should be instructed to make payments from the defendant's restricted funds in accordance with the judgment.

The Bureau policy as to the Navajo Nation is not only that set forth in general Bureau regulations an internal decisions, but it is that contained in 7 N.T.C. Sec. 206, which was enacted as Sec. 1 of Tribal Council Res. CJA-1-59. That section prohibits field employees of the Bureau from obstructing the functions of the Navajo courts and requires the cooperation and assistance of B.I.A. employees. That tribal code section is a policy of the Bureau of Indian Affairs which must be obeyed by Bureau employees because of the acceptance and approval of the provision by the Secretary of the Interior on February 11, 1959. Oliver v. Udall, 306 F.2d 819, 822 (C.A.D.C. 1962).

We also consider the decision of the Assistant Secretary of the Interior in the case Appeal of Vera Barrows Garmann. 5 Indian L. Rep. H-17 (August 23, 1978). That appeal called into question the legality of a tribal court decision which was arguably clearly contrary to the tribe's constitution and bylaws and its own law and order code. The Assistance Secretary upheld the tribal court judgment and he stated:

"It has been a longstanding general principle on the part of the Department of the Interior that the

Indian tribes are empowered to interpret their own governing documents. Consequently, when this Department is called upon to decide an issue that requires the interpretation of tribal governing documents, it will give great weight to any interpretation of those documents made by an appropriate tribal forum." Id. at p. H-18.

In the case of Tom v. Sutton a question arose as to a legal interpretation by the Lummi Tribal Court, and the Ninth Circuit Court of Appeals applied the rule of recognition which is applicable here:

"(I)n defining the purpose, scope and operative effect of a state constitution, federal courts should accept the interpretation of the courts of that state unless there are federal constitutional questions involved. In our opinion, like deference should be given to tribal courts in regard to their interpretation of tribal constitutions." 533 F.2d 1101, 1106 (C.A. 9, 1976). (Citations omitted).

Federal courts bind themselves by state interpreations of state law and the same would be true of tribal law. Of course we do not have a tribal constitution to interpret here, since the Navajo Nation has no constitution, but the same principles of law compel the United States to accept the interpretations of the Navajo Nation's courts regarding Navajo law.

Therefore the Bureau of Indian Affairs is required to recognize this court's interpretation of Navajo law and recognize its orders.

IV.

MISCELLANEOUS CONSIDERATIONS

The field solicitor's opinion observes the order of this court does not state the amount of child support arrearage and that it "seeks to continue the garnishment indefinitely." While it is true that an arrearage amount is not stated, the order does indicate that the garnishment will continue until further order of the court. However the point is well taken, and contemporaneously with this opinion and order the court will exercise its power under Rule 23 of the Rules of Civil Procedure to correct and amend the judgment retroactively (nunc pro tunc) to fix an arrearage.

V.

ORDER

Based on the foregoing considerations and determinations by this court it is hereby ORDERED:
1. That the law of the Navajo Nation is determined to permit garnishment or other orders to satisfy judgments from the wages owing to judgment debtors;

2. That the order of this court is determined to be one falling within the definition of 42 U.S.C. Sec. 662(e) as enforcible under 42 U.S.C. Sec. 659;

3. That the Clerk of Court shall resubmit the Order of October 13, 1981, as amended, to the appropriate official of the Bureau of Indian Affairs, giving notice and making service in compliance with 42 U.S.C. Sec. 659(b) (personal service, certified or registered mail, return receipt requested);

4. That in the event the amended order is not honored by the Bureau of Indian Affairs the Clerk of Court shall forward any notice of dishonor to the Chief Justice of the Navajo Nation with a request that he instruct the Legal Counsel to the Navajo Tribal Courts to initiate appropriate legal action against the United States or its employees to enforce the aforesaid judgment.