**Etta K. BUTLER, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 80–0586.**

United States District Court, District of Columbia.

Oct. 24, 1980.

Reconsideration Denied Feb. 18, 1981.

Patrick J. Griffin, Jr., Berliner & Maloney, Washington, D. C., for plaintiff.

James F. Bromley, Washington, D. C., for defendant.

## MEMORANDUM OPINION

AUBREY E. ROBINSON, JR., District Judge.

Before the Court are Cross Motions for Summary Judgment in the above captioned case. Plaintiff is Etta K. Butler, mother of William Kitrell, the deceased. Defendant insured Kitrell's life pursuant to the Federal Employees Group Life Insurance Act (FEGLIA) 5 U.S.C. § 8701 *et seq.* The undisputed facts in the above captioned case may be summarized as follows:

William Kitrell, a resident of the District of Columbia, was born on April 4, 1949, the child of Etta Kitrell Butler and William Grandberry. The parents were never married, and Grandberry deserted Plaintiff and his son before Kitrell was born. Grandberry never contributed to the support of Kitrell, nor did he acknowledge paternity in a judicial proceeding. Grandberry never offered comfort or emotional support to his son. Their first encounter occurred at Kitrell's initiation when he was 16; subsequent encounters occurred very sporadically.

On March 5, 1978, Kitrell died as a result of injuries suffered in an automobile accident. The total amount of insurance policy proceeds owed upon the death of Kitrell was Thirty Thousand Dollars ($30,000).

Kitrell had not designated a beneficiary to his policy, nor was he survived by a widow or issue. Both Plaintiff and Grandberry claimed the insurance proceeds accruing under Kitrell's policy. Defendant determined that, under FEGLIA, each was entitled to one–half of the proceeds and, on June 13, 1978, Defendant paid Plaintiff and Grandberry Fifteen Thousand Dollars ($15,000) each. In this action, Plaintiff contends that she is entitled to the entire proceeds, and seeks (1) judgment for Fifteen Thousand Dollars ($15,000) plus interest, (2) punitive damages, and (3) attorneys fees.

FEGLIA mandates that, when an insured fails to name a beneficiary and is not survived by a spouse or issue, proceeds are to be paid "to the parents" of the insured. 5 U.S.C. § 8705(a). The sole question before the Court is whether Grandberry is a "parent" within the meaning of that provision.

 Defendant asserts that because Grandberry is Kitrell's biological father, it correctly paid Grandberry one–half of the insurance proceeds. This contention is without merit. Biology in and of itself is not determinative of an individual's status as a "parent"–FEGLIA requires the Court to scrutinize the *legal status* of claimants, in order to assess the merits of their claims. *See Metropolitan Life Ins. Co. v. Manning,* 568 F.2d 922, 926 (2d Cir. 1977). Since there are no federal laws of domestic relations or inheritance, this Court must analyze Grandberry's legal status in the context of District of Columbia local law, as the place of Kitrell's domicile at the time of his death. *Id.,* at 926; *Green v. Green,* 365 A.2d 610 (D.C.App.1976).

 In the District of Columbia the biological father of an illegitimate child is not automatically treated as the legal "parent" for all purposes of the law. (*See,* e. g., 19 D.C.Code 316, which provides that it is the *mother* of the illegitimate child who is· entitled to the real and personal estate of the child upon his death, when he leaves no descendants, or brothers or sisters.) In order to establish the relationship of natural parent and natural child, for all purposes under the law, an individual can either 1) adopt the child, 16 D.C.Code 312, or 2) mar-ry the child's mother and acknowledge the child, 19 D.C.Code 318. Grandberry pursued neither of these options. Thus, he need not be considered Kitrell's "parent" for purposes of determining the lawful recipient of the life insurance proceeds under 5 U.S.C. § 8705(a).

Defendant correctly alleges, however, that the biological father of an illegitimate child is not deemed to be the child's parent because of the many difficulties in ascertaining *who* the natural father is. Admittedly, this problem does not present itself in the instant litigation.

This Court need not and does not base its judgment upon a rigid application of the "illegitimacy" statutes, because such an application might effectuate a disservice to the policy underlying FEGLIA. FEGLIA was enacted to allow federal employees to be "better enabled ... to carry out their responsibilities to their families." *Metropolitan Life Ins. Co. v. Thompson,* 368 F.2d 791, 793 (3d Cir. 1966). Grandberry's failure to marry Plaintiff in and of itself does not necessarily show that he abandoned Kitrell. To address the relationship between Grandberry and the deceased, the Court must inquire whether Grandberry is a "parent" as delineated in the District of Columbia Code.

31 D.C.Code § 309 provides the only definition of "parent." That section defines a "child" as someone under twenty–one years of age, and a "parent" as a person who is either the natural parent, stepfather or stepmother, or adoptive father or mother *and* "has custody or control of such child." Grandberry never maintained custody or control over Kitrell; indeed, he never met Kitrell until the latter was sixteen. Under this definition, then, Grandberry is not a "parent."

Furthermore, it is clear that, but for the diligence of Plaintiff, Grandberry would have been divested of his parental rights. Had Plaintiff not accepted her responsibility as a mother to raise and care for Kitrell, he would have been "abandoned" within the meaning of 3 D.C.Code § 116, and committed to the Board of Public Welfare. Dis-

vestiture proceedings could have been initiated, transferring legal custody over Kitrell to an individual qualified to care for him. 16 D.C.Code § 2320(a)(3). Grandberry was relieved of this divestiture through no action of his own. Neither he nor Defendant can now claim that because Plaintiff assumed the responsibility of caring for Kitrell, Grandberry somehow fulfilled the function of parenthood. Principles of equity, as well as concepts of legal status, necessitate finding for Plaintiff in the instant case. *See Brantley v. Skeens,* 266 F.2d 447, 452–454 (D.C. Cir. 1959).

Defendant claims that this conclusion will work an administrative nightmare on the processing of FEGLIA claims. This contention is without merit. The facts presented in the instant case do not bespeak repetition. Whenever conflicting claims are presented that promote uncertainty, Defendant can pay the proceeds into the registry of the Court and file an action in interpleader. *See Brantley v. Skeens,* 266 F.2d at 450; *Metropolitan Life Ins. Co. v. Manning,* 568 F.2d at 924. Having full knowledge of the conflicting claims in the instant case, Defendant should have pursued this course of action. Its failure to do so cannot deprive Plaintiff of her entitlement to the insurance proceeds.

Plaintiff has requested punitive damages in the instant litigation. It has proffered no evidence reflecting bad faith, and is therefore not entitled to punitive damages.

### ORDER

Upon consideration of Defendant's Motion for Reconsideration, the Response thereto and the entire record herein, the Court notes that its reference to 31 D.C. Code § 309 in the above captioned case in no way implies that that provision was determinative of the issues presented. Rather, the Court notes that local law, taken as a whole, determines whether an individual is a "parent" within the meaning of FEGLIA, and that § 309 was merely one provision scrutinized by the Court.

ORDERED, that Defendant's Motion be and hereby is DENIED.