**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Raymond L. CARR and Mattie F. Bennett, Defendants.**

**Civ. A. No. CA3–87–2624–D.**

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 4, 1988.

Richard L. Nelson and Michaela E. Conway of Johnson, Bromberg & Leeds, Dallas, Tex., for plaintiff.

Gabriel Hernandez Robles, Dallas, Tex., for defendant Mattie F. Bennett.

Martha R. Kulmacz of Keel and Kulmacz, Oklahoma City, Okl., and David Fenton Williams, Dallas, Tex., for defendant Raymond L. Carr.

## MEMORANDUM OPINION
## AND ORDER

FITZWATER, District Judge.

This civil action requires the court to interpret the term "parent" in 5 U.S.C. § 8705(a).

### I.

At the time of his death, Carl D. Curlee ("decedent") was an employee of the U.S. Postal Service and an insured of plaintiff, Metropolitan Life Insurance Company ("Metropolitan"). Decedent died intestate, unmarried, and without children. He also failed to designate a beneficiary of his life insurance policy with Metropolitan.

The Metropolitan policy was issued under the Federal Group Life Insurance Program, pursuant to the Federal Employees' Group Life Insurance Act of 1954 ("FEGLIA"), now codified as 5 U.S.C. §§ 8701–16. Payment of policy proceeds upon the death of the insured is thus regulated by § 8705. Section 8705(a)[1] establishes an order of precedence in payment. The applicable provision in the instant case is the clause that provides for payment "to the parents of the employee."

It is undisputed that defendant, Mattie F. Bennett ("Bennett"), is decedent's natural mother. Upon decedent's death Metropolitan paid one-half the policy proceeds to her. The co-defendant, Raymond L. Carr ("Carr"), claims that he is the decedent's biological father and thus is his "parent" within the meaning of § 8705(a). Metropolitan filed the instant action in interpleader because both Bennett and Carr assert that they are entitled to the remaining policy proceeds. Metropolitan contends that it is unable to determine the respective rights of the defendants and faces multiple liability in the event it pays the wrong party.

Bennett has moved for summary judgment, contending she is the only "parent" of the deceased within the meaning of the Metropolitan policy. She posits that federal regulations that govern federal employee life insurance programs do not prescribe how the term "parent" is to be defined, but that, under Texas law, she is the only "parent" of the deceased and so is entitled to all the remaining policy proceeds. In a letter supplement, Bennett asserts that a 1987 amendment to the Code of Federal Regulations demonstrates that Carr is not a "parent" as a matter of law. She also argues that Metropolitan is not entitled to recover attorney's fees because they are not available under Texas law.

Metropolitan opposes only the portion of Bennett's motion that contends Metropolitan is not entitled to recover attorney's fees.

Carr opposes the motion on the grounds that he is a parent of the deceased under the terms of the insurance policy and that the Texas Family Code does not apply to the insurance policies of adults or, if it does, that the Code does not bar Carr's entitlement to recover because the Code does not abrogate the terms of the insurance contract in question. Carr also contends he has filed in a Texas court a peti-

---

1. At the time of decedent's death, 5 U.S.C. § 8705(a) provided:

The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of benefi-

ciary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to the widow or widower of the employee.

Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.

Fourth, if none of the above, to the parents of the employee or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

tion under § 42 of the Texas Probate Code to determine his paternity of the deceased. Carr additionally argues that Bennett is barred from recovery by virtue of the doctrine of unclean hands and that Metropolitan should not recover its attorney's fees.

## II.

### A.

■ The court must first decide whether Texas law controls the interpretation of the term "parent." The court is persuaded that it does.[2]

In *Spearman v. Spearman*, 482 F.2d 1203 (5th Cir.1973), the Fifth Circuit decided the meaning of the term "widow" in a FEGLIA life insurance policy. The court observed that neither the policy nor the Act defined the term. *Id.* at 1204. Following the lead of other courts, including the Supreme Court in *De Sylva v. Ballentine*, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), the Fifth Circuit agreed "that federal courts should look to state law in defining terms describing familial relations." *Spearman*, 482 F.2d at 1204–05 (citing *De Sylva*, 351 U.S. at 580, 76 S.Ct. at 980). *See also Metropolitan Life Insurance Co. v. Manning*, 568 F.2d 922, 926 (2d Cir.1977) (interpreting "widower" in accordance with state law).

### B.

■ The court next applies Texas law to the summary judgment record. For purposes of this determination the court assumes that Carr is the decedent's biological father.

On the date of decedent's death, the Texas Family Code defined a male parent as "a man as to whom the child is legitimate, or an adoptive ... father."[3] TEX.FAM. CODE ANN. § 11.01(3) (Vernon 1986). A

child is the legitimate child of a man if (a) the child is born or conceived before or during the marriage of his father and mother, (b) the child's parents have attempted to marry in apparent compliance with the law of Texas or another state or nation, although the attempted marriage is or might be declared void, and the child is born or conceived before or during the attempted marriage, or (c) the man's paternity is established under the provisions of the Texas Family Code. *Id.* § 12.02(a)–(c).

The summary judgment record plainly establishes that Carr was never married to Bennett, that they never attempted to marry, and that Carr's paternity has not been established under the provisions of the Texas Family Code. The record also reflects that Carr did not adopt the decedent. Under the Texas Family Code, therefore, Carr was not decedent's "parent" on the date of decedent's death.

Carr argues, however, that the definition of "parent" set forth in the Texas Family Code applies only to the Code and not to Texas law generally. The Code itself does state that the definitions apply to terms "used in this subtitle [§ 11.01 *et seq.*] and Subtitle C of this title [§ 31.01 *et seq.*]." Nevertheless, Carr does not cite any authority, nor has the court found any, for the proposition that Texas law otherwise defines the term "parent" in a manner that would entitle Carr to receive the insurance proceeds in question.

The Texas Probate Code provision discussed *infra* that Carr intends to utilize to establish his parental status, TEX.PROB. CODE ANN. § 42(b) (Vernon Supp.1988), essentially follows the definition of "parent" utilized in the Family Code.[4] Although the Probate Code establishes a separate procedure whereby a person claiming

---

**2.** The court rejects Bennett's reliance on the federal regulatory definition set forth at 5 C.F.R. § 870.901(a)(3) (1988). This regulation took effect in December 1987. As the court holds *infra*, the court is to determine Carr's status as of the date of decedent's death.

**3.** The law was amended in 1987 and now includes in the definition of parent "a man who has been adjudicated to be the biological father

by a court of competent jurisdiction." TEX. FAM.CODE ANN. § 11.01(3) (Vernon Supp. 1988).

**4.** TEX.PROB.CODE ANN. § 42(b) (Vernon Supp.1988) includes parallel provisions to TEX. FAM.CODE ANN. § 12.02(a) and (c) (Vernon 1986 & Supp.1988) but does not include the provision of § 12.02(b) (parents' attempt to marry).

inheritance through an illegitimate child may prove, by clear and convincing evidence, that he is the father of the child, the Probate Code does not thereby enlarge the Family Code's definition of "parent."

## C.

■ Carr's reliance upon his present efforts to establish a right of inheritance pursuant to TEX.PROB.CODE ANN. § 42(b) (Vernon Supp.1988), or to sue for voluntary legitimation pursuant to TEX. FAM.CODE ANN. § 13.21(e) (Vernon Supp.1988), is misplaced. The court holds that Carr must have accomplished such actions prior to the decedent's death in order to be a "parent" within the meaning of 5 U.S.C. § 8705(a).

Congress has evinced its intent, in certain amendments to the FEGLIA beneficiary designation procedure, to eliminate administrative difficulties for the government and the insurance companies and to avoid delays in paying insurance proceeds to beneficiaries of federal employees. *See Manning*, 568 F.2d at 925–26 (citing 1966 FEGLIA amendments, Pub.L. No. 89–373, 80 Stat. 78 (1966), and legislative history, Rep. No. 1064, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 2070, 2071). If the court were to hold that, at some undetermined future date, the determination of parentage can be made retroactively to the date of death, the court would potentially impose administrative difficulties and delay in the payment of benefits that Congress has sought to avoid.

■ Alternatively, even if a post mortem change in status is permissible under the statute, the court holds that it must be made within two years of the decedent's death. In § 8705(c) Congress has indicated its intent that claims by persons designated in § 8705(a) be made no later than two years after the death of an employee. If no claim is made by a § 8705(a) designee within two years of death, § 8705(c) provides that payment shall be made to the claimant who, in the judgment of the Office of Personnel Management, is equitably entitled thereto. It is undisputed that the decedent died on May 30, 1986. As of May 30, 1988, Carr had not been determined under Texas law to be the "parent" of the decedent.

Whether the court holds that Carr's status as of the date of death or as of May 30, 1988 controls, Carr was not on either date the decedent's "parent" under Texas law. Accordingly, it is immaterial that he may now seek voluntary legitimation or a probate code determination of paternity.

## D.

■ Carr's final argument is that Bennett is barred from recovering by the equitable doctrine of unclean hands. The court disagrees.

First, it is arguable that the 1966 FEGLIA amendments have eliminated, if not compromised, the unclean hands defense. As the court discusses above, Congress sought by those amendments to eliminate administrative problems and payment delays by requiring strict compliance with the statute. The decision in *Brantley v. Skeens*, 266 F.2d 447 (D.C.Cir.1959), on which Carr relies, predated the 1966 amendments.

Second, even if the court holds that the unclean hands defense is available, Carr has not adduced sufficient evidence to present a fact issue. In his response Carr grounds his unclean hands defense on the contentions that Bennett and her family acknowledged Carr to be the decedent's father, that Bennett listed Carr as decedent's father in the funeral announcement, and that, *after* decedent's death, Bennett procured Carr's waiver of his right to the insurance proceeds by representing falsely that the proceeds would barely pay for the funeral and that the funeral would not take place unless Carr signed the waiver. Assuming these assertions to be true, they would not support a jury verdict under the unclean hands doctrine.

*Brantley*, the only decision that Carr cites to support this defense, involved an egregious set of facts in which a party's claim was "predicated on both perjury and bigamy." *Id.* at 452. The district court found the conduct so outrageous that it

invoked the unclean hands doctrine *sua sponte.* Carr has not demonstrated that, under less egregious facts, a court can deprive the lawful beneficiary from receiving proceeds that Congress intended she have.

Moreover, Carr has not raised a fact issue whether any of Bennett's conduct caused Carr to lose any right to share in the proceeds that he otherwise would have had. Two of the acts of which Carr complains occurred *after* the decedent's death and thus could not have precluded Carr from qualifying as a "parent" under Texas law prior to the decedent's death. Carr has not presented summary judgment evidence from which a trier of fact could find that the third act—acknowledging Carr as the decedent's father—caused Carr to relinquish rights he would otherwise have had. Were there evidence that Bennett and her family acknowledged facts that would make Carr a "parent" under Texas law, and that Carr relied upon such acknowledgment in not exercising his rights, Carr might have a basis for establishing causation. Carr's evidence, however, shows only that Bennett and her family acknowledged a biological fact, which alone is insufficient.

### III.

█ The court rejects Bennett's summary judgment contention that Metropolitan is not entitled to recover its attorney's fees. Several reported cases implicitly approve Metropolitan's using the interpleader procedure. One decision, *Butler v. Metropolitan Life Insurance Co.,* 500 F.Supp. 661 (D.D.C.1980), concludes that Metropolitan should have brought such an action under circumstances such as these. *Id.* at 664.

Accordingly, for the foregoing reasons the court holds that Bennett is entitled to recover the proceeds of the insurance policy in question. If she and Metropolitan can agree to an attorney's fee, they can so inform the court and the court will enter an appropriate judgment; otherwise, the questions of the awardability [5] and amount of an attorney's fee will be decided in due course.

SO ORDERED.

---

5. Although the court holds that Bennett has not demonstrated a right to summary judgment precluding Metropolitan from recovering its attorney's fees, the court does not, absent a motion by Metropolitan, decide the converse.