**METROPOLITAN LIFE INSURANCE CO., Plaintiff,**

v.

**West BROWNING, Wilson Ely, Derrick I. Anderson, a minor child, and Angela Manjor a/k/a Angela Anderson (as mother and next friend of Derrick I. Anderson, Defendants,**

No. CIV–93–138–R.

United States District Court,
W.D. Oklahoma.

Oct. 29, 1993.

L.E. Stringer, Mark D. Spencer, Crowe & Dunlevy, Oklahoma City, OK, for plaintiff.

Michael Gassaway, Oklahoma City, OK, for West Browning.

William J. Bergner, Lori R. Roberts, Bergner & Christensen, Oklahoma City, OK, for Wilson Ely.

Wilson Ely, pro se.

Michael E. Smith, Nelson Sherwood & Brown, Oklahoma City, OK, for Derrick Anderson and Angela Manjor.

## *MEMORANDUM OPINION AND ORDER*

DAVID L. RUSSELL, District Judge.

### I. *INTRODUCTION*

Before the Court is defendant West Browning's motion for summary judgment. Defendants Wilson Ely, Derrick I. Anderson, and Angela Manjor responded in opposition.

This case is an interpleader action brought by plaintiff Metropolitan Life Insurance Company (MetLife) naming a federal employee's (decedent Willie J. Murphy) natural mother—West Browning; a claimed illegitimate child—Derrick Anderson and his mother and next friend—Angela Manjor; and the putative father of decedent—Wilson Ely, as defendants to determine their rights to the proceeds of a Federal Employees' Group Life Insurance Act, 5 U.S.C. §§ 8701–16, (FEGLIA) policy. *See* 28 U.S.C. §§ 1335 (interpleader), 2361 (interpleader process and procedure); Fed.R.Civ.P. 22 (interpleader). Plaintiff has deposited $238,000 plus interest in the Court's registry. On October 22, 1993, the Court signed an agreed order that discharged plaintiff MetLife and awarded it $7,500 to be paid from the funds in the Court's registry.

### II. *MOTION TO WITHDRAW ADMISSIONS*

Also before the Court is defendant Wilson Ely's motion to amend or withdraw admissions. That motion has been fully briefed and after careful consideration the Court finds that defendant West Browning has not argued or demonstrated any prejudice should the motion be granted and thus the motion is GRANTED. No other party had any objection to the motion, and Ely's actions have not created substantial delay.

### III. *STANDARD FOR SUMMARY JUDGMENT*

Facts presented to the Court upon a motion for summary judgment must be construed in a light most favorable to the nonmoving party. *Board of Educ. v. Pico,* 457 U.S. 853, 864, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 993, 8 L.Ed.2d 176 (1962) (per curiam). If there can be but one reasonable conclusion as to the material facts, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. In order to prevail, the movant must show enti-

tlement to judgment as a matter of law. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985); Fed.R.Civ.P. 56(c).

A fact is material if it must be resolved in order for the dispute to be adjudicated, and a dispute is genuine if its decision requires a trial. W. Schwarzer, A. Hirsch, & D. Barrans, *The Analysis And Decision Of Summary Judgment Motions*, 139 F.R.D. 441, 445, 451, 454 (1991). The Court will not grant summary judgment based on a battle of affidavits that raise genuine material disputes. *DeVargas v. Mason & Hanger–Silas Mason Co.*, 844 F.2d 714, 719 (10th Cir.1988), *appeal after remand*, 911 F.2d 1377 (10th Cir.1990), *cert. denied*, 498 U.S. 1074, 111 S.Ct. 799, 112 L.Ed.2d 860 (1991). However, a party cannot generally create a factual dispute by submitting an affidavit that is contradicted by prior deposition testimony. *E.g., Bryant v. Western Elec. Co.*, 572 F.2d 1087, 1088 (5th Cir.1978) (per curiam); *Rodobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir.1975); *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir.1969).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255, 106 S.Ct. at 2513. Although the Court must view the facts and inferences drawn from the record in a light most favorable to the nonmoving party, "even under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chem. Co.*, 849 F.2d 1269, 1273 (10th Cir. 1988). As stated by the Supreme Court, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

The Supreme Court articulated the standard to be used in summary judgment cases, emphasizing the "requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (emphasis in original). The Court stated that the question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the [party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [party]." *Id.* at 252, 106 S.Ct. at 2512. It is not enough if the nonmovant's evidence is merely colorable or anything short of significantly probative. *Id.* at 251–52, 106 S.Ct. at 2511–12. "[A] trial judge must bear in mind the actual quantum and quality of proof necessary to support liability" under the substantive burden of proof and must determine whether the proffered evidence "is of insufficient caliber or quality to allow a rational finder of fact to find [liability]." *Id.* at 254, 106 S.Ct. at 2513.

Where the nonmovant plaintiff fails to show sufficient proof of an essential element of plaintiff's case, and on which plaintiff bears the burden of proof at trial, then all other facts are rendered immaterial regardless of any genuine factual disputes that might otherwise be raised as to them. *Palermo v. First Nat'l Bank & Trust Co.*, 894 F.2d 363, 367 (10th Cir.1990); *Maritan v. Birmingham Properties*, 875 F.2d 1451, 1460 (10th Cir.1989).

When assessing the evidence, but not weighing it, the Court is only required to draw reasonable inferences from the record. *See Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988) (judgment as a matter of law standard). Implausible inferences can be rejected. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–98, 106 S.Ct. 1348, 1355–61, 89 L.Ed.2d 538 (1986) (rejecting implausible inference of intent regarding an antitrust conspiracy claim due to the absence of an economic motive).

## IV. ANALYSIS

### A. Derrick Anderson's Claim.

Plaintiff MetLife responded that it does not perceive any legal or factual reasons for denying West Browning's motion for summary judgment. "Under FEGLIA, ... the Office of Personnel Management ("OPM") is authorized to purchase a group life insurance policy from a qualified private insurance company to provide life insurance benefits to eligible federal employees." *Metropolitan Life Ins. Co. v. McShan*, 577 F.Supp. 165, 166 (N.D.Cal.1983); *see also Metropolitan Life Ins. Co. v. Smith*, 727 F.Supp. 234, 235 (W.D.N.C.1989); 5 U.S.C. § 8709(a) (insurance policies). MetLife was chosen by OPM to provide life insurance benefits to decedent who was a civil employee at Tinker Air Force Base. Pursuant to statute, MetLife is authorized to pay insurance policy proceeds to valid claimants according to the statutory order of precedence.

With the relevant portion highlighted, the pertinent statute provides:

**Death claims; order of precedence; escheat**

(a) *The amount of group life insurance* and group accidental death insurance *in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death, in the following order of precedence:*

First, to the beneficiary or beneficiaries designated by the employee in a signed and witnessed writing received before death in the employing office or, if insured because of receipt of annuity or of benefits under subchapter I of chapter 81 of this title as provided by section 8706(b) of this title, in the Office of Personnel Management. For this purpose, a designation, change, or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to the widow or widower of the employee.

*Third, if none of the above, to the child or children of the employee and descendants of deceased children by representation.*

*Fourth, if none of the above, to the parents of the employee or the survivor of them.*

Fifth, if none of the above, to the duly appointed executor or administrator of the estate of the employee.

Sixth, if none of the above, to other next of kin of the employee entitled under the laws of the domicile of the employee at the date of his death.

(b) If, within 1 year after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence named by subsection (a) of this section, or if payment to the person within that period is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if the person had predeceased the employee, and the payment bars recovery by any other person.

(c) If, within 2 years after the death of the employee, no claim for payment has been filed by a person entitled under the order of precedence named by subsection (a) of this section, and neither the Office nor the administrative office established by the company concerned pursuant to section 8709(b) of this title has received notice that such a claim will be made, payment may be made to the claimant who in the judgment of the Office is equitably entitled thereto, and the payment bars recovery by any other person.

(d) If, within 4 years after the death of the employee, payment has not been made under this section and no claim for payment by a person entitled under this section is pending, the amount payable escheats to the credit of the Employee's Life Insurance Fund.

5 U.S.C. § 8705 (1978) (emphasis supplied).

It is uncontroverted that decedent Murphy died in an automobile accident. He had a life insurance policy underwritten by MetLife in the sum of $238,000 and he did not designate a beneficiary. Decedent Murphy was unmarried and there is no descendant of any

**1512**

child who predeceased him. This case presents a peculiar circumstance in that decedent has an alleged illegitimate son who claims the total amount of the insurance. Should the son not have a valid claim, then the proceeds may be claimed by the parents. In that event, a second major problem arises.

Decedent Murphy was an illegitimate child and his mother, West Browning, disputes any claim by the putative father—Wilson Ely. Thus, this Court's task is to first interpret the term "child" as set forth in the relevant statute, and in the event the alleged son is not entitled to the insurance proceeds, then the Court must interpret the term "parent," in order to ascertain if the putative father may take an equal share with the deceased's mother, West Browning.

Plaintiff MetLife contends, joined by defendant West Browning in a reply brief, that this matter is exclusively governed by a federal regulation, which was only recently promulgated and has very little interpretative case law. MetLife contends that case law that predates the regulation, while persuasive, does not control. In fact, defendant Ely also agrees that the regulation is applicable and only defendant Anderson actually contests applicability.

■ Although West Browning suggests that the 1993 (actually 1992) version of the federal regulation controls, the Court finds that the regulation and law in effect at the time of the death of the insured controls the determination regarding the payment to claimants and that would include only the 1987 version of the federal regulation. *See Metropolitan Life Ins. Co. v. Smith,* 727 F.Supp. at 236–37; *Metropolitan Life Ins. Co. v. Carr,* 690 F.Supp. 569, 571 n. 2 (N.D.Tex.1988); *see also* 5 U.S.C. § 8705(a) (1978) (emphasis supplied) ("The amount of group life insurance and group accidental death insurance in force on an employee at the date of his death shall be paid, on the establishment of a valid claim, to the person or persons surviving at the date of his death."). Although application of the relevant law is vital, as a practical matter, it is really a distinction without a difference as the December 7, 1987 version of the federal regulation is virtually identical in relevant

part to the amended version cited by defendant Browning, which became effective July 7, 1992—two months following the death of insured on May 6, 1992. *See* Browning's brief at ex. BB.

■ Defendant Anderson contends that state law controls this determination. Although there is no published case law exactly on point, the Court disagrees and concludes that federal law controls. *See Dean v. Johnson,* 881 F.2d 948, 948–49 (10th Cir.) (finding federal law and its regulations are preemptive and thus control determination of whether insured's change of designated beneficiary takes precedence over a state court order prohibiting such a change), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 574, 107 L.Ed.2d 569 (1989), *cited with approval in Metropolitan Life Ins. Co. v. Christ,* 979 F.2d 575, 577 (7th Cir.1992), *overruling Rollins ex rel. Rollins v. Metropolitan Life Ins. Co.,* 863 F.2d 1346, 1349–52 (7th Cir.1988) (in fashioning federal rule of decision, state law equitable principles may be incorporated to impose constructive trust over insurance proceeds where insured was court ordered to provide insurance for his children and he did not designate a beneficiary thus creating a claim by his widow of a subsequent marriage), *appeal after remand,* 912 F.2d 911 (7th Cir.1990) (affirming imposition of constructive trust on FEGLIA funds), *overruling recognized in Pedro Enters., Inc. v. Perdue,* 998 F.2d 491, 494 (7th Cir.1993). FEGLIA, 5 U.S.C. § 8716(a), authorizes OPM to prescribe regulations necessary to carry out the legislative purposes of the act. *Metropolitan Life Ins. Co. v. McShan,* 577 F.Supp. at 166.

Federal law and its regulations preempt state law to the extent of any conflict. *Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 578, 579 ("We may also infer preemption when a pervasive scheme of federal regulation makes it reasonable to infer that Congress intended exclusive federal regulation of the area."); *Metropolitan Life Ins. Co. v. McShan,* 577 F.Supp. at 166, 169 ("federal regulations have no less preemptive effect than federal statutes") (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 152–154, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982)); *Metropolitan Life Ins.*

*Co. v. Potter,* 533 So.2d 589, 590–94 (Ala. 1988) (notwithstanding concerns over harshness, state law in conflict with the administration of FEGLIA, a federal program, is preempted by federal law and its regulations because of the Supremacy Clause and Supreme Court precedent). Moreover, there is specific statutory language that preempts state law that relates to group life insurance. 5 U.S.C. § 8709(d)(1):

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

*Id.; see Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 579 (" ' "[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans, or the effect is only indirect." ' " (quoting *Morales v. TWA, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2031, 2038, 119 L.Ed.2d 157 (1992) (in turn quoting *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990)))).

The federal regulations control on an independent ground. Relevant statutory definitions for the Servicemen's Group Life Insurance Act of 1965 (SGLIA), 38 U.S.C. §§ 1965–79, provide pertinent guidance and are instructive. SGLIA was promulgated subsequent to, and patterned after, FEGLIA; both acts involve group insurance for either federal servicemen or federal employees, both acts authorize the employment of private insurance carriers to provide insurance, and some provisions in both acts are virtually identical. *Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 580–82 (citing *Ridgway v. Ridgway,* 454 U.S. 46, 55–61, 102 S.Ct. 49, 54–58, 70 L.Ed.2d 39 (1981)); *Stribling v. United States,* 419 F.2d 1350, 1353–54 (8th Cir.1969); *Metropolitan Life Ins. Co. v. McShan,* 577 F.Supp. at 167; *Metropolitan Life Ins. Co. v. Potter,* 533 So.2d at 593. In SGLIA, Congress painstakingly defined child and parent in the specific manner that OPM has now defined these terms in its regulations. *Compare* 38 U.S.C. § 1965(8), (9) *with* 5 C.F.R. § 870.901 (1987), *amended* (1992); *see also Prudential Ins. Co. v. Moorhead,* 916 F.2d 261, 265 n. 5 (5th Cir.1990) ("The Senate Report for [SGLIA] explains that '[t]he bill adopts the most widely accepted criteria established by State law and the judicial precedents for establishing that an illegitimate child is the child of his alleged father." (quoting S.Rep. No. 545, 92 Cong., 1st Sess. 2 (1971), 1971 U.S.C.C.A.N. 2127–28)).

Because of this closely parallel history, courts have looked at one act in order to construe the other because of concomitant Congressional motivations of "the compelling and very practical objective to avoid thrusting upon the private insurance carriers undue administrative burdens." *Stribling v. United States,* 419 F.2d at 1354–55; *see Metropolitan Life Ins. Co. v. McShan,* 577 F.Supp. at 166–67, 169; *see also Prudential Ins. Co. v. Moorhead,* 916 F.2d at 264–66 & n. 3 (federal interests are substantial under SGLIA notwithstanding military aspects of the insurance).

The Court also notes that FEGLIA specifically attempts to narrow the term "child" in relation to defining an illegitimate child in 5 U.S.C. § 8701(d)(1)(B), which mentions a "recognized natural child." Thus, the qualification of limiting an illegitimate child to one that is recognized in one section of the statute should be used to help clarify the open-ended term "child" in another section. *See FDIC v. Barker,* No. CIV–88–1359–R, at 26 (W.D.Okla. Jan. 3, 1990).

> [I]napt or inadvertent use of words, phrases, or expressions, or use of language of doubtful meaning will not be permitted to change or destroy the otherwise clearly expressed intention of the legislature and such words, phrases, or expressions, or language of doubtful meaning will be construed so as to promote harmony in the various provisions of the act and give practical effect to the legislative intent.

*Id.* (quoting *Alfalfa Elec. Coop., Inc. v. First Nat'l Bank & Trust Co.,* 525 P.2d 644, 647 (Okla.1974)). Although the term "recognized

natural child" is not further defined, this term does provide some weight that Congress intended the term child to include only natural children that are recognized.

Further, in a context not presented in the instant case that involved designation of beneficiaries, the Tenth Circuit has ruled that notwithstanding any concerns by the trial court for the harshness or inequities imposed by the result, " 'Congress intended to establish, for reasons of administrative convenience and for the benefit of designated beneficiaries, an inflexible rule that the beneficiary designated in accordance with the statute would receive the policy proceeds, regardless of other documents or the equities in a particular case.' " *Dean v. Johnson,* 881 F.2d at 949 (quoting with approval *O'Neal v. Gonzalez,* 839 F.2d 1437, 1440 (11th Cir.1988) (footnote omitted)); *accord Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 578–79 (Congress has reacted promptly to foreclose any equities in the statute interpreted by federal courts in order to further federal interests of administrative convenience and avoidance of delay in payment of proceeds that results from litigation).

Particular federal interests are at work because FEGLIA insurance policies are not private contracts between the insured and the insurer, but rather comprise a federal policy administered under federal law. *O'Neal v. Gonzalez,* 839 F.2d at 1440; *Estate of Hanley v. Andresen,* 39 Wash.App. 377, 378, 693 P.2d 198, 199 (1984). Federal interests are particularly at stake because the federal government makes contributions to pay for the insurance and thus subsidizes it; the federal employee only pays a portion of the premium. *See Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 576; 5 U.S.C. §§ 8707–08. "The Federal Government is in effect a self-insurer of the FEGLI[A] Program," and thus fully assumes all insurance risks. H.Rep. No. 101–327, 101st Cong., 2nd Sess. 4 (1990), 1990 U.S.C.C.A.N. 207, 212 (Findings from Report of Committee on Government Operations).

A primary federal interest is providing a substitute source of income for dependents for that lost by the insured's death. *Metropolitan Life Ins. Co. v. Thompson,* 368 F.2d 791, 793 (3d Cir.1966), *cert. denied sub nom.* 388 U.S. 914, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967); *Butler v. Metropolitan Life Ins. Co.,* 500 F.Supp. 661, 663 (D.D.C.1980); *Haley v. Metropolitan Life Ins. Co.,* 434 S.W.2d 7, 12 (Mo.Ct.App.1968) (per curiam). The paramount federal interest is in reliability of paternity claims by illegitimate children, which are well-known to be problematical and strongly contested. *See Prudential Ins. Co. v. Moorhead,* 916 F.2d at 264–66 & n. 5 (holding that SGLIA's requirement that proof of paternity must be made prior to death and may be made either by a voluntary, written acknowledgement of paternity by the father or else by four well-recognized judicial forms of recognition and further holding this scheme is constitutional because it is substantially related to important governmental objectives). Another strong federal interest includes elimination of "administrative problems and payment delays by requiring strict compliance with the statute." *Metropolitan Life Ins. Co. v. Carr,* 690 F.Supp. at 572; *see also Prudential Ins. Co. v. Moorhead,* 916 F.2d at 265 ("the orderly and efficient administration of a deceased's estate is an important governmental interest").

The Court concludes that the federal regulation does control the outcome of this action. The operative federal regulation is promulgated by the Office of Personnel Management and has the force of law. *See Dean v. Johnson,* 881 F.2d at 949; *Metropolitan Life Ins. Co. v. Smith,* 727 F.Supp. at 236–37; *O'Neal v. Gonzalez,* 653 F.Supp. 719, 722–23 (S.D.Fla.1987), *aff'd,* 839 F.2d 1437, 1439–40 (11th Cir.1988); *Knowles v. Metropolitan Life Ins. Co.,* 514 F.Supp. 515, 516 (N.D.Ga. 1981). The operative regulation reads:

**Subpart I—Order of Precedence and Designation of Beneficiary**

**§ 870.901  Order of precedence.**

(a) *Definitions.* For the purposes of this part, the following terms are defined as follows:

(1) *"Child" means a* legitimate child, an adopted child, or a *recognized natural child* but does not include a stillborn child, a stepchild, or a foster child. An individual who has attained age 18 is considered to

be an adult. However, if the age of majority in the jurisdiction in which that individual is domiciled is set at a lower age, he or she is considered to be an adult upon attaining the age designated in that jurisdiction. An adopted child does not inherit under the order of precedence specified in 5 U.S.C. 8705, other than as a designated beneficiary, from his/her natural parents but inherits from and through his or her adoptive parents. However, a child who is adopted by the spouse of his or her natural parent does inherit from that natural parent.

(2)(i) *A recognized natural child, with respect to paternity, is one for whom the father meets one of the following:*

(A) *Has acknowledged paternity in writing;*

(B) *Has been judicially ordered to provide support;*

(C) *Has, before his death, been judicially decreed to be the father;*

(D) *Has been established as the father by a certified copy of the public record of birth or church record of baptism if the insured was the informant and so named himself as the father of the child; or*

(E) *Has established paternity on public records, such as school or social welfare agencies, which show that with his knowledge the insured was named as the father of the child.*

(ii) *Secondary evidence to support the alleged paternity, such as evidence of eligibility as a recognized natural child under other State or Federal programs or proof of inclusion of the child as a recognized natural child on the insured's income tax returns, may also be considered in the determination process.*

(3) "Parent" means the mother or father of a legitimate child or an adopted child. *The term "parent" includes the mother of a recognized natural child and the father of a recognized natural child but only if the recognized natural child meets the definition provided in paragraph (a)(2) of this section.* An individual cannot inherit from a child who has been adopted by someone else. However, an individual whose spouse adopted his or her child can inherit from that child.

(b) [Reserved].

5 C.F.R. § 870.901 (1987) (emphasis supplied). This regulation preempts conflicting state law and has controlling effect. *See Prudential Ins. Co. v. Whitney,* 745 F.Supp. 1506, 1509 (W.D.Mo.1990):

(It is a recognized principle of statutory construction that where the language of a statute is plain, clear, and unambiguous, the court should be guided by the ordinary meaning of the words used. Where a statute states what a key term "means," all other meanings, ordinary or otherwise, shall be presumed excluded. Statutory definitions are given controlling effect, because they are regarded as "authoritative evidence of legislative intent." (citations omitted)),

*aff'd,* 954 F.2d 516 (8th Cir.1992). "Where Congress has directed an administrator to exercise his discretion, his judgments are subject to judicial review only to determine whether he has exceeded his statutory authority or acted arbitrarily," and this limited review similarly applies to promulgated regulations. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. at 153–54, 102 S.Ct. at 3022–23.

Finally, and independently dispositive is the express language of the insurance policy:

If any person otherwise entitled to payment under Section 5 hereof or this Section does not make claim therefor within one year after the death of the Employee, or *if payment to such person* within that period *is prohibited by Federal statute or regulation, payment may be made in the order of precedence as if such person had predeceased the Employee.* Payment to any person by virtue of the preceding sentence shall be a bar to recovery by any other person.

Browning's supplemental brief at ex. A (emphasis supplied); *see Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 577.

■ For purposes of summary judgment only, the Court will take defendant Derrick Anderson's proffered evidence as true as it must. In this light and with all inferences

taken favorably to Derrick Anderson, the Court finds that defendant Angela Manjor and decedent Murphy had a sexual relationship that culminated in the birth of Derrick Anderson. Murphy had constant telephone contact with Derrick Anderson and made voluntary child support payments. Murphy verbally acknowledged his paternity of Derrick Anderson, took his son into his home, and maintained a father/son relationship with him. The two bear an extreme physical likeness, and a photo of them together was seen at West Browning's house. Defendant Browning and her children recognized Derrick Anderson as Murphy's son. Under these facts, there would be no doubt that Derrick Anderson is the natural child of decedent and might establish paternity for other purposes.

However, the Court is confronted with a Congressional scheme and its authorized administrative regulations that are designed to resolve the extremely difficult question of establishing paternity with regard to distributing federal insurance proceeds. The federal regulations simply do not provide for distribution of these proceeds to all natural children of an insured decedent. Unless the child is either legitimate or adopted, then only *recognized* natural children are eligible for distribution. 5 C.F.R. § 870.901(a)(1).

Recognized natural children are easily and arbitrarily determined by the factors noted. Nonrecognized natural children may not collect insurance benefits. This result may be harsh under certain circumstances and seems harsh here. *See Metropolitan Life Ins. Co. v. Christ,* 979 F.2d at 582 (FEGLIA provides a rather simple administrative scheme that ignores the difficulties that complicate real life; Congress has spoken with force and clarity in directing payment of benefits and "courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text." (quoting *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990))). "It is within Congress' power to avoid any unpalatable results; but if Congress chooses to favor administrative efficiency over more equitable considerations, it

is not our place to second-guess or try to bypass that decision." *Id.*

Application of the regulations also excludes stepchildren and foster children and that result might be equally harsh under certain conditions. It should be kept in mind that the insured is specifically asked about designating beneficiaries and Murphy could have designated anyone he chose regardless of family affiliation.

There is also evidence in this case that for personal and religious reasons decedent Murphy expressly did not want to recognize Derrick Anderson as his natural child. Derrick Anderson's mother, Angela Manjor, testified that "Willie [Murphy] told me not to put the father's name there [on Derrick Anderson's birth certificate]." Browning's brief at Ex. G, p. 15. Derrick Anderson received some support from decedent, but he was also supported by public assistance. *Id.* at Ex. I, p. 17. Even in one of defendant Anderson's authorities, *Metropolitan Life Ins. Co. v. Buckley,* 278 F.Supp. 334, 336 (S.D.Miss. 1967), the father acknowledged paternity in a sworn statement. That reason would suffice under the federal regulations. The reality of the matter is that prior to his death the father never acknowledged in writing that he was the father of the child. Moreover, for purposes best known to the mother and the deceased father, they never pursued any of the other methods that would establish recognized paternity.

Manjor argues that she did not pursue a paternity action because under Oklahoma law it would have obligated decedent Murphy to have to pay child support. Manjor and Anderson's brief at 15. Manjor testified that she received welfare assistance from Oklahoma and California for the child. *See* Browning's brief at ex. I, p. 17. Manjor also provided evidence that between June 29, 1991, and December 20, 1991, decedent mailed her $375, which averages to about $62 per month during that 6 month period. These money wire transfers are made out to Angela Manjor and do not indicate that they are for child support and are not signed by Willie Murphy. Although Manjor testified that she told the Welfare Department that Murphy was the father of the child, there is

no indication that she reported the support payments so that they might be deducted from welfare assistance. In this same regard, Derrick Anderson's claim for survivor benefits was tentatively dismissed by the Federal Employment Retirement System on October 6, 1992, because Anderson never came forward with any proof that he was financially dependent on Murphy. Browning's supplemental brief at ex. C.

The Court finds that no relevant evidence has been presented by defendants that proves Derrick Anderson was decedent insured's *recognized natural child* as defined by the regulations so as to entitle Derrick Anderson to collect under the subject insurance policy by virtue of his order of precedence and the Court so declares.

### B. *Wilson Ely's Claim.*

■ With regard to defendant Wilson Ely's claim, the only provision that is even remotely in contention is subsection (a)(2)(i)(E) (established paternity on public records) of the applicable federal regulation. Ely's total proffered evidence is that he lived with decedent insured's mother, West Browning, in Mobile, Alabama when Murphy was born. Ely supported them both while West Browning was unemployed. Ely moved to Chicago in 1969, but kept in touch, was emotionally close, and visited Murphy at least once a year, and they spent a week together during Christmas 1991. Ely states that he went hunting and fishing with decedent when he was a teenager and always acknowledged him as his son, and also West Browning always recognized Ely as decedent's father. Ely claims that his sisters, brothers and nieces can confirm that he is decedent's father. Ely also asserts that he is listed as the father on the death certificate, in the obituary, and on decedent's school record. Critically, only the school record was made prior to the insured's death.

With regard to the school record, Ely agrees that the federal regulations are controlling. Ely submits a school record that lists him as Willie Murphy's father. Ely's brief at ex. D. Ely argues that the record was made with his knowledge with the implication that Murphy is thus a recognized nat-

ural child pursuant to the operative regulation. This argument is patently frivolous for several reasons.

First, there is no evidence that Ely even had knowledge of the record. Ely submitted an affidavit, but he never even mentioned the school record nor swore to his knowledge of the record. All that emerges is argument by counsel that Ely had knowledge of the record, which is insufficient at summary judgment. Moreover, even if such evidence was submitted it would be insufficient to overcome summary judgment as a matter of law. On the same page 8 of his brief where he makes this unsupported argument, Ely quotes the pertinent regulation which reads that the parent "[h]as established paternity on public records, such as school or social welfare agencies, *which show that with his knowledge the insured was named as the father of the child.*" The proffered school record does not requisitely show on its face that Ely acknowledged that he was the father of Murphy. Highly to the contrary, next to the name of the father "Willie Lee Ely" it reads that his address is "Unknown." It is less than reasonable that Ely would not know his own address, and therefore no inference can be drawn that he supplied the information on the record. Thus, no reasonable trier of fact could conclude that the school record shows that Ely acknowledged paternity of Murphy.

Ely claims that the death certificate provides secondary evidence of his paternity of Murphy. That claim is likewise frivolous for separate reasons. First, it was created after Murphy's death and thus does not prove that Ely acknowledged paternity prior to the death of his son. *Cf. Prudential Ins. Co. v. Moorhead,* 916 F.2d at 265 ("It is no accident that each of the five [SGLIA] classes involve events that must occur while the *insured father is alive.*" (emphasis supplied)). Second, the death certificate clearly shows that West Browning was the informant, not Wilson Ely as required.

All of this evidence is substantially insufficient as a matter of law when viewed in light of the controlling federal regulation. Therefore, the Court declares that defendant Ely has no lawful right to any insurance pro-

ceeds. This decision is not one of biology, but rather legal status. *See Butler v. Metropolitan Life Ins. Co.,* 500 F.Supp. at 663. That status is fixed at the date of death of the insured, and if "the determination of parentage can be made retroactively to the date of death, the court would potentially impose administrative difficulties and delay in the payment of benefits that Congress has sought to avoid." *Metropolitan Life Ins. Co. v. Carr,* 690 F.Supp. at 572. Thus, evidence proffered in the form of death certificates and obituaries cannot even be considered. In the same vein, in order to be a valid claimant, Ely must have acknowledged in writing that he is the father of decedent prior to Murphy's death, and his affidavit to that effect made after the death has no force.

### V. *CONCLUSION*

Accordingly, defendant Wilson Ely's motion to withdraw admissions is **GRANTED.** Defendant West Browning's motion for summary judgment is **GRANTED.** A judgment reflecting these rulings has been entered separately. This case is **STRICKEN** from this Court's November 1993 jury trial docket.

After the payment of costs and fees as set forth above, the Court declares that West Browning is the sole recipient of the balance of the funds in the Court's registry.

**IT IS SO ORDERED.**